DURANT v DEPARTMENT OF EDUCATION (ON SECOND
REMAND)

Docket No. 91271. Submitted September 27, 1989, at Lansing. Decided
November 5, 1990, at 9:00 A.M. Leave to appeal sought.

The Fitzgerald Public Schools and Donald Durant and other
taxpayers within the district brought an action for mandamus
in the Court of Appeals, seeking, pursuant to Const 1963, art 9,
§§ 25 through 34 (the Headlee Amendment) to compel the
Department of Education, Department of Management and
Budget, and the State Treasurer to fund the Fitzgerald Public
Schools to the same extent that the schools were funded in
fiscal 1978-79. The Court refused to issue the writ on the
ground that the plaintiffs had not exhausted their administra-
tive remedies. 110 Mich App 351 (1981). The Supreme Court
reversed and remanded to the Court of Appeals for considera-
tion of the merits of plaintiffs' claim in light of § 29. 413 Mich
862 (1982). On remand, the Court of Appeals dismissed the
complaint on the ground that mandamus generally does not lie
in cases involving unresolved factual disputes, without preju-
dice to the plaintiffs' right to seek development of an eviden-
tiary record and resolution of the factual disputes before the
local governmental claims review board, followed by judicial
review if necessary. 129 Mich App 517. The Supreme Court
affirmed the substantive findings of the Court of Appeals, but
concluded that the Court had erred in part of its reasoning and
in the procedural disposition of the case and remanded the case
to the Court of Appeals with instructions to appoint a fact-
finder to resolve the factual disputes and to report the findings
to the Court of Appeals. 424 Mich 364. The Court of Appeals
appointed Judge George R. Deneweth of the Macomb Circuit
Court, who permitted the plaintiffs to amend their complaint,
and then denied the defendants' motions for summary disposi-
tion, which sought dismissal of counts III through V of the

REFERENCES

Am Jur 2d, Constitutional Law §§ 139, 140, 143, 147; Schools §§ 91,
92; Taxpayers' Actions §§ 37, 63, 64.

Allowance of counsel fees in taxpayer's action in state court. 89
ALR3d 690.

plaintiffs' amended complaint. Proofs were taken, and factual findings were reported to the Court of Appeals.

Thereafter, the Court of Appeals *held:*

The case is remanded to the factfinder for further proceedings. The factfinder erred in denying defendants' motions for partial summary disposition.

1. With regard to the issue of unrestricted state aid, as a matter of law, no factual development possibly could justify a right of recovery. The School Aid Act provides for unrestricted aid, which is not required to be used for any particular activity or service, and for categorical aid, which is designed to support a specific service or activity. Application of § 29 of the Headlee Amendment is limited to those services and activities that are required by state law and funded, in part or in toto, by categorical aid. Because unrestricted aid may be used to defray the cost of any expense incurred in the operation of a school district, it can only be said that such aid is being used to finance the general operation of the district and not a portion of any activity or service required by state law. The test is not solely whether an activity or service is required by state law, but whether a portion of the specific activity or service required by state law was specifically financed by the state at the time § 29 was ratified. Only state-required activities or services funded by categorical aid at the time of the ratification of § 29 satisfy both prongs of the test.

2. With regard to the statute of limitations issue, the enactment of the one-year period of limitation to enforce the Headlee Amendment was a valid exercise of legislative authority. Under MCR 2.118(D), the factfinder correctly concluded that the claims for additional funding arising out of the alleged underfunding for fiscal 1979-80 related back, but erred in finding that claims for subsequent fiscal years also related back. However, because the plaintiffs timely filed their claim for fiscal 1984-85, it is treated as an original action and is consolidated with the initial action. The plaintiffs may recover any proven underfunding of categorical aid occurring in fiscal 1979-80 and 1984-85.

3. The state's funding obligations under § 29 extended to the necessary costs of special education, special education transportation, driver's education, and school lunch and supplemental milk programs for fiscal 1978-79, but not to bilingual instruction. Necessary costs are ascertained by determining the net costs to local government, i.e., the actual market costs that would be incurred by the state if it provided the service or activity itself. The factfinder must then determine the total

amount of categorical aid received by the district for the service or activity and divide that amount by the total necessary costs to arrive at the state-financed portion of the necessary costs. Categorical aid may not be reduced below the level paid by the state in fiscal 1978-79. On the basis of the record, remand to the factfinder is required to determine the necessary costs of providing these services, what proportion of the necessary costs were reimbursed by the state with categorical aid, whether the state violated its funding obligations under § 29, and the dollar amount of any underfunding occurring in violation of § 29.

4. The executive order budget-reduction provision of Const 1963, art 5, § 20 does not apply to categorical aid. Nor may the Legislature reduce categorical aid by operation of the base revenue reduction provision of MCL 388.1621(4); MSA 15.1919(921)(4).

5. Costs of bringing an action under § 32 of the Headlee Amendment include reasonable attorney fees. On remand, if it is determined that defendants underfunded the plaintiff district in violation of § 29, the factfinder is to determine an appropriate award of costs, including reasonable attorney fees.

6. The question whether mandamus should issue is reserved pending additional findings by the factfinder.

Remanded to the trier of fact.

1. CONSTITUTIONAL LAW — SCHOOLS — STATE AID — HEADLEE AMENDMENT.

Section 29 of the Headlee Amendment applies to only those services and activities provided by school districts that are both required by state law and funded, in part or in toto, by categorical aid (Const 1963, art 9, § 29; MCL 388.1743; MSA 15.1919[1043]).

2. CONSTITUTIONAL LAW — SELF-EXECUTING PROVISIONS — HEADLEE AMENDMENT.

The constitutional provision which confers standing upon Michigan taxpayers to bring suits in the Court of Appeals to enforce certain provisions of the Headlee Amendment is self-executing and requires no legislative assistance as a prerequisite to its operation (Const 1963, art 9, § 32).

3. CONSTITUTIONAL LAW — LIMITATION OF ACTIONS — HEADLEE AMENDMENT.

The one-year period of limitation on a taxpayer's right to bring suit to enforce the provisions of the Headlee Amendment is not an impermissible infringement on the rights guaranteed under

the amendment and is a valid exercise of legislative authority (Const 1963, art 9, § 32; MCL 600.308a[3]; MSA 27A.308[1][3]).

4. CONSTITUTIONAL LAW — SCHOOLS — CATEGORICAL AID — BALANCED BUDGET.

Categorical aid, which is comprised of funds constitutionally dedicated for specific purposes within the meaning of Const 1963, art 5, § 20, is exempt from the executive order reduction provision of Const 1963, art 5, § 20.

5. CONSTITUTIONAL LAW — SCHOOLS — CATEGORICAL AID — BASE REVENUE REDUCTIONS — HEADLEE AMENDMENT.

The Legislature may not reduce categorical funding for state-mandated services and activities below the level paid in fiscal 1978-79 by operation of the base revenue reduction provision set forth in MCL 388.1621(4); MSA 15.1919(921)(4) (Const 1963, art 9, § 29).

6. CONSTITUTIONAL LAW — SCHOOLS — CATEGORICAL AID — HEADLEE AMENDMENT.

The Headlee Amendment may not be applied to reduce the amount of categorical aid, i.e., aid provided for a specific activity or service, below the level paid by the state in fiscal 1978-79 (Const 1963, art 9, § 29).

7. ACTIONS — COSTS — ATTORNEY FEES — HEADLEE AMENDMENT.

Costs, including reasonable attorney fees, are properly awarded to a taxpayer whose suit to enforce Const 1963, art 9, §§ 25-31 is sustained (Const 1963, art 9, § 32).

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *Dennis R. Pollard, Michael R. Mueller,* and *Richard E. Kroopnick* ), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Gerald F. Young, Paul J. Zimmer* and *Jane D. Woodfin,* Assistant Attorneys General, for the defendants.

Amicus Curiae:

*Hoekenga, Amberg, McNenly, Zuschlag, Firestone & Lee, P.C.* (by *Daniel J. Hoekenga* and *Kathlyn M. Thomas*), for Michigan Education As-

sociation and Warren Fitzgerald Education Association.

### ON SECOND REMAND

Before: DANHOF, C.J., and GILLIS and MACKEN-ZIE, JJ.

DANHOF, C.J. Plaintiffs brought the instant action for mandamus in this Court, seeking to compel defendants to fund the Fitzgerald Public Schools in the same portion as those schools were funded in the fiscal year 1978-79, pursuant to Const 1963, art 9, §§ 25-34, more commonly referred to as the Headlee Amendment. We refused to issue the requested writ on the ground that plaintiffs had not exhausted their administrative remedies because they had failed to first obtain a decision before the local government claims review board pursuant to MCL 21.240; MSA 5.3194(610). *Durant v Dep't of Ed,* 110 Mich App 351; 313 NW2d 571 (1981). Our Supreme Court, in lieu of granting leave to appeal, reversed, finding that plaintiffs were not required to exhaust their administrative remedies before our resolution of the legal issues raised, and remanded, ordering us to consider the merits of plaintiffs' claim. *Durant v Dep't of Ed,* 413 Mich 862; 317 NW2d 854 (1982). On remand, we were charged with the interpretation of the following language set forth in that portion of the Headlee Amendment found at Const 1963, art 9, § 29:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law.

Our substantive conclusions of law were as follows:

(1) the broad concept of "education" is too indefinite to be considered an existing activity or service required of school districts by state law within the meaning of § 29 of the Headlee Amendment; (2) only those specific and identifiable programs which the state requires school districts to provide by state statute or state agency regulation fall within the state financing requirements of § 29; (3) the "necessary costs" of a required service or activity are those costs which are essential to the completion of the intended purpose of the state-mandated activity, and they must be determined on a statewide basis, computed according to the actual cost to the state, were it to provide the required activity or service; (4) the state is not required to maintain the level of unrestricted state school aid which was present at the time § 29 became effective; and (5) the state is required to maintain the level of funding of categorical aid for the necessary costs of programs required of school districts by state statute or state agency regulation that existed at the time § 29 became effective. [*Durant v Dep't of Ed (On Remand)*, 129 Mich App 517, 533-534; 342 NW2d 591 (1983).]

After arriving at these conclusions, we again dismissed plaintiffs' complaint for mandamus on the ground that the remedy generally does not lie in cases involving unresolved factual disputes. *Id.,* p 534. This dismissal was without prejudice to plaintiffs' right to go before the local government claims review board for the development of an evidentiary record and a resolution of the factual disputes, followed by a judicial review, if the parties were still aggrieved. *Id.* Thereafter, plaintiffs sought and obtained review by our Supreme Court. The Court affirmed our substantive findings but concluded that we had erred in some of our reasoning and in our procedural disposition of the instant case. *Durant v State Bd of Ed,* 424 Mich 364, 371; 381 NW2d 662 (1985). The Court re-

manded the case to this Court and instructed us to appoint a factfinder pursuant to MCL 600.308a; MSA 27A.308(1) and MCR 7.206(D)(3) to resolve the factual disputes and report findings to this Court. *Durant,* 424 Mich 394. By order issued April 10, 1986, we referred the instant case to Chief Judge George R. Deneweth of the 16th Judicial Circuit for the taking of proofs and the reporting of factual findings. The proofs have been taken; the factual findings have been reported. We now examine those findings with a view towards resolving plaintiffs' claims.

I

As a prelude to our discussion of plaintiffs' right to funding pursuant to § 29, we find it necessary to examine the propriety of Judge Deneweth's denial of defendants' motions for partial summary disposition as to counts III through V of plaintiffs' amended complaint. How we resolve defendants' claim that Judge Deneweth erroneously denied their motions will help establish the parameters of plaintiffs' possible right to funding.

The School Aid Act of 1979, MCL 388.1601 *et seq.;* MSA 15.1919(901) *et seq.,* provides for two basic forms of state aid to local school districts, unrestricted aid and categorical aid.

Unrestricted aid, provided pursuant to MCL 388.1743; MSA 15.1919(1043), is a general grant of money based on pupil membership in the school district, wealth of the district as measured by the state equalized valuation of property per pupil, and on local taxing efforts. This type of aid is not correlated with any specific service or activity required by the state and, therefore, may be used by the school district for such purposes as teacher salaries, transportation, heating and textbooks. On

the other hand, categorical aid is designed to support a specific service or activity provided by a local school district, such as special education, MCL 388.1651-388.1656; MSA 15.1919(951)-15.1919(956), and driver's education, MCL 257.811; MSA 9.2511. [*Durant,* 129 Mich App 531-532.]

Plaintiffs' original complaint filed with this Court contained three counts. In count I, plaintiffs alleged that § 29 required the state to maintain the level of unrestricted aid that it had been providing plaintiff district at the time the Headlee Amendment became effective. In counts II and III, plaintiffs alleged that § 29 imposed the same constitutional obligation on the state as pertains to the level of categorical aid disbursed to the district for its special education and driver education programs, respectively. All three counts referenced only the fiscal year 1979-80.

Subsequent to the entry of our April, 1986, order referring the instant case to the factfinder, plaintiffs filed a motion to amend their complaint. Judge Deneweth granted plaintiffs' motion over defendants' objection.

Counts I and II of plaintiffs' amended complaint repeated the claims asserted in counts II and III of plaintiffs' original complaint. In counts III and IV of plaintiffs' amended complaint, plaintiffs sought to remedy alleged underfunding in categorical aid received by plaintiff district for the district's bilingual education and lunch and supplemental milk programs. In count V, plaintiffs modified their claim for unrestricted aid, seeking unrestricted aid in an amount totalling 11.58 percent of the operating expenses for each of the activities and services set forth in twelve paragraphs which plaintiffs alleged they were required by state law to provide. All five counts referenced funding allegedly wrong-

fully withheld "for each school year from 1979-80 through the date such judgment is entered . . . ."

Defendants filed a motion for partial summary disposition pursuant to MCR 2.116(C)(7) and (8) in response to the filing of plaintiffs' amended complaint. Defendants sought the dismissal of count v of plaintiffs' amended complaint on the ground that plaintiffs had failed to state a cause of action because our Supreme Court, in *Durant*, 424 Mich 378, had held that unrestricted aid did not constitute funding for an existing activity or service required by state law within the meaning of § 29. Defendants also sought dismissal of counts III through v of plaintiffs' amended complaint on the ground that the claims asserted therein were barred by the one-year period of limitation set forth in MCL 600.308a(3); MSA 27A.308(1)(3). Judge Deneweth rejected defendants' arguments and denied their motion by written opinion and order dated November 19, 1986. The judge reasoned in pertinent part:

> This Court is not convinced that the claims set forth in plaintiffs' Count v are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. It is true that the citation by defendants of the Michigan Supreme Court's advance declaration of their holding supports defendants' argument. The Supreme Court stated at 424 Mich, page 378:
> "[W]e hold that . . . unrestricted state aid is not funding for an 'existing activity or service required of units of Local Government by state law.' "
> Although this preamble appears to be on point and an easy answer, the following discussion and holding by the Michigan Supreme Court does not support the conclusion asserted by defendants. Indeed, at 424 Mich, page 392, the Court declined to resolve a very similar formulation of this issue because it had not been adequately developed. This

Court agrees that further factual development is
necessary. The Michigan Supreme Court's opinion
made a ruling as to what the Headlee Amendment
unambiguously forbids. The Headlee Amendment
is not clear on unrestricted state aid.

* * *

The Court does not reach the issues raised as to
the validity of MCL 600.308a [MSA 27A.308(1)]
because it is of the opinion that the amended
complaint relates back to the date of the original
complaint. . . .

The original complaint is broad in scope and
challenges an alleged reduction in the state
financed proportion of the necessary costs of pro-
viding for education. Included in Count I, para-
graph 14, is a decrease of unrestricted aid. The
first amended complaint breaks down plaintiffs'
allegations in greater detail in separately enumer-
ated counts and lists the alleged activities and
services which were mandated by state law and
have allegedly been affected by decreases in state
aid. The Court is of the opinion that the identifica-
tion and listing of specific services and activities is
not the assertion of "new" claims. It is the Court's
opinion that the first amended complaint therefore
relates back to the date of the original complaint
and is timely.

A subsequent motion for partial summary dispo-
sition brought by defendants, seeking the dismissal
of count v of plaintiffs' amended complaint on the
same ground as asserted in defendants' original
motion for summary disposition, was denied by
Judge Deneweth by written opinion and order
dated September 29, 1987. In support of his deci-
sion to deny defendants' motion, Judge Deneweth
reasoned:

The crux of the question presented by defen-
dants in the motion is whether "unrestricted state
aid" which may be expended for the whole gamut

of school district operating purposes constitutes the "state financed proportion" of the necessary costs of the services and activities listed in Counts III, IV and V of plaintiffs' amended complaint.

* * *

The legislature narrowed the application of the Headlee Amendment by defining "state financed proportion" as funds "*specifically provided*" for an activity or service.

A statutory definition which conflicts with the constitutional grant of authority is unconstitutional. See *Durant, supra,* 424 Mich 364 at 392.

In the opinion of this Court, the statutory definition is unconstitutional because it conflicts with the intent of the Headlee Amendment. The amendment did not intend to limit a reduction in state funding only where the state funding was provided for a specific activity. If that was the goal of the people, clear language to that effect would have been employed. Rather, Art 9, § 29 on its face bars a reduction in state funding of any existing activity or service. A reduction in unrestricted aid for any existing activity or service required by the state is such a reduction just as much as is a reduction in categorical aid.

We conclude that Judge Deneweth erred in denying defendants' motions as they pertain to count V and erred in part in denying defendants' motion as it pertains to counts III and IV.

A

UNRESTRICTED AID

Defendants sought the dismissal of count V on the ground that plaintiffs had failed to state a claim upon which relief could be granted. A motion brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone.

*Formall, Inc v Community Nat'l Bank of Pontiac,* 166 Mich App 772, 777; 421 NW2d 289 (1988). The motion should be denied unless the claim is so clearly unenforceable as a matter of law that no factual development could possible justify a right of recovery. *Scameheorn v Bucks,* 167 Mich App 302, 306; 421 NW2d 918 (1988), lv den 430 Mich 886 (1988).

At issue is what our Supreme Court meant when it held that "unrestricted state aid is not funding for an 'existing activity or service required of units of Local Government by state law.' " *Durant,* 424 Mich 378. Defendants argue that the Court's holding limits an application of § 29 only to those services and activities that are both required by state law and funded, in part or in toto, by categorical aid. Plaintiffs reject defendants' argument that the provision of unrestricted aid to a school district may not create a funding obligation on the part of the state under § 29. Plaintiffs argue that the Court's holding was never intended to remove from the ambit of § 29 those services and activities, whose provision are required by state law and whose expenditures are not funded by categorical aid but are defrayed, at least in part, by unrestricted aid. We believe defendants advance the better argument.

In *Durant,* the Court found that state aid specifically allocated for identified activities or services required of a school district by state statute or state agency rule (i.e., categorical aid) fell within the ambit of § 29. *Durant,* 424 Mich 391-392. The Court also found that unrestricted aid does not constitute funding for required activities or services. When read together, these pronouncements by the Court necessarily imply that § 29 only applies to state funding earmarked for a particular activity or service. Such a conclusion is consistent

with the language of § 29. As previously noted, § 29 proscribes the reduction of the *state financed portion* of the necessary costs of an existing activity or service required by state law. In order for the state to finance an activity or service, it must supply funds or capital to the district to carry out the activity or service. *Needles v Kansas City,* 371 SW2d 300, 305 (Mo, 1963). When the state supplies categorical aid to the district, it is supplying funds for the particular purpose of insuring that a specific activity or service required by the state is provided and, hence, that the state can be said to be financing a portion of the costs of a required activity or service. However, when the state supplies unrestricted aid to a school district, it does so without conditioning the receipt of the funding on its use for the provision of any particular, identifiable activity or service. Therefore, because unrestricted aid may be used to defray the cost of *any* expense incurred in the operation of a school district, it can only be said that such aid is being used to finance the general operation of the district and not a portion of any activity or service required by state law. The test is not solely whether an activity or service is required by state law but whether the specific activity or service is required by state law *and* whether the state was specifically financing a portion of *that* activity or service at the time § 29 was ratified. Only state-required activities or services funded by categorical aid at the time of the ratification of § 29 satisfy both prongs of this test.

For the reasons set forth above, we conclude that, as a matter of law, no factual development could possibly justify a right of recovery under count v of plaintiffs' amended complaint. Judge Deneweth erred in denying defendants' motion for partial summary disposition.

B

STATUTE OF LIMITATIONS

Defendants sought the dismissal of counts III through V of plaintiffs' first amended complaint on the ground that these counts were barred by the running of the period of limitations. MCR 2.116(C)(7). When a party moves for summary disposition under MCR 2.116(C)(7), we review the validity of the movant's claim by considering any affidavits, pleadings, depositions, admissions and documentary evidence then filed or submitted by the parties. Where a material factual question is raised by these documents, summary disposition is improper. *Levinson v Sklar*, 181 Mich App 693, 697; 449 NW2d 682 (1989).

Const 1963, art 9, § 32 confers standing upon Michigan taxpayers to bring suits in this Court to enforce the provisions of §§ 25 through 31 of the Headlee Amendment. Our Legislature has limited the taxpayers' right to bring such actions by enacting a one-year period of limitation. MCL 600.308a(3); MSA 27A.308(1)(3).

Plaintiffs raised two arguments below in response to defendants' motion. First, plaintiffs argued that § 32 is a self-executing constitutional provision and that by imposing a one-year period of limitation on the right to bring suit, our Legislature has impermissibly restricted that right. Second, plaintiffs argued that their amended complaint relates back to May 7, 1980, the date the original complaint was filed. We find no merit in either argument.

A determination of whether a constitutional provision is self-executing rests largely on whether legislation is a necessary prerequisite to the opera-

tion of the provision. *Wolverine Golf Club v Sec of State,* 24 Mich App 711, 725; 180 NW2d 820 (1970), aff'd 384 Mich 461; 185 NW2d 392 (1971). As explained by our Supreme Court:

> A constitutional provision may be said to be self-executing, if it supplies a sufficient rule, by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. [*Thompson v Sec of State,* 192 Mich 512, 520; 159 NW 65 (1916), quoting Cooley, Constitutional Limitations (7th ed), p 121.]

Section 32 provides in pertinent part:

> Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article . . . .

We do not read § 32 as a mere statement of abstract principles. Nor do we find the language employed in § 32 indicative of an intent that the section was to remain dormant until given life by legislative enactment. On the contrary, we find that § 32, by defining standing, sets forth a rule by which the rights guaranteed in the other provisions of the Headlee Amendment may be enjoyed and protected and manifests an intention that any suit for enforcement be conducted in accordance with the general laws of this state. Accordingly, we find that § 32 requires no legislative assistance as a prerequisite for its operation. Section 32 is self-executing. *Thompson,* 192 Mich 520.

The question then becomes whether the one-year period of limitation constitutes an impermissible

infringement on the rights guaranteed under the Headlee Amendment. We conclude that it does not.

It is well-recognized law that a legislature may not impose additional obligations on a self-executing constitutional provision. *Wolverine Golf Club v Sec of State,* 384 Mich 461, 466; 185 NW2d 392 (1971). However, this does not mean that a legislature may not enact legislation that would supplement such a provision.

> The only limitation, unless otherwise expressly indicated, on legislation supplementary to self-executing constitutional provisions is that the right guaranteed shall not be curtailed or any undue burdens placed thereon. [*Hamilton v Sec of State,* 227 Mich 111, 125; 198 NW 843 (1924), quoting *State, ex rel Caldwell v County Judge,* 22 Okla 712; 98 P 964 (1908).]

A one-year period of limitation does not curtail or place undue burdens on a taxpayer's exercise of rights granted by the Headlee Amendment. At the close of any given fiscal year, if not sooner, a unit of local government possesses sufficient information to ascertain whether the state has breached any of its funding obligations under the amendment. A one-year period of limitation insures that a taxpayer or unit of local government will act promptly to protect the governmental unit's right to funding. Moreover, by forcing a taxpayer or governmental unit to act promptly, the period of limitation serves to insure the fiscal integrity of the local governmental unit and the state—an outcome consonant with the intent of the voters. In other words, by enacting a one-year period of limitation, the Legislature adapted the general laws of the state to better fulfill the purpose of the

amendment. Such assistance is permissible. *Thompson,* 192 Mich 520.

Having determined that the enactment of the one-year period of limitation was a valid exercise of legislative authority, we now turn to a discussion of the merits of plaintiffs' claim that their amended complaint relates back to the date of the filing of the original complaint.

MCR 2.118 permits the amendment of pleadings. MCR 2.118(D) governs the relation back of these amendments. This subrule provides that an amendment relates back to the date of the filing of the original pleading if the claim asserted in the amended pleading springs from the same conduct, transaction or occurrence set forth, or attempted to be set forth, in the original pleading. See also *Boyle v Odette,* 168 Mich App 737, 744; 425 NW2d 472 (1988).

Plaintiffs' original complaint was filed on May 7, 1980, as previously noted. The conduct set forth in the original complaint was defendants' failure to honor its funding obligation for the fiscal year 1979-80. Plaintiffs' amended complaint, filed during the summer of 1986, not only sets forth claims for additional funding arising out of defendants' alleged failure to properly fund plaintiff district in fiscal 1979-80, but also sets forth claims for funding arising out of defendants' alleged failure to adequately fund plaintiff district in subsequent fiscal years. The former claims spring from the conduct set forth in plaintiffs' original complaint, or, in other words, from facts giving rise to a then-existing right to commence and maintain an action at law to enforce payment of state aid consistent with the dictates of § 29. However, the latter claims do not arise out of the same conduct because those claims arise out of facts coming into existence in fiscal years subsequent to 1979-80.

Accordingly, we conclude that Judge Deneweth correctly concluded that the claims for additional funding arising out of the alleged underfunding for the fiscal year 1979-80 did relate back. However, we also conclude that he erroneously found that the claims for funding arising out of the alleged underfunding in subsequent fiscal years related back. Nevertheless, we note that plaintiffs filed their amended complaint in a timely manner as regards a cause of action arising out of alleged underfunding in the fiscal year 1984-85. Therefore, we will treat plaintiffs' amended complaint as an original action stating a cause of action arising during the fiscal year 1984-85, and we will consolidate that action with the instant action. Thus, plaintiffs may recover any proven underfunding of categorical aid occurring in the fiscal years 1979-80 and 1984-85.

II

We now turn to a review of plaintiffs' claims for alleged underfunding in services required by state law and financed, at least in part, if not in toto, by categorical aid.

Judge Deneweth found that the following services were required by state law, funded by categorical aid, and subject to the dictates of § 29: special education, MCL 380.1711; MSA 15.41711, special education transportation, MCL 380.1756; MSA 15.41756, bilingual instruction in school districts with an enrollment of twenty or more children of limited English-speaking ability in a language classification, MCL 380.1153; MSA 15.41153, driver education, MCL 257.811; MSA 9.2511, and school lunch and supplemental milk programs, MCL 380.1272a; MSA 15.41272(1). Judge Deneweth also found that defendants withheld funding in

violation of § 29 for each of the services listed in the preceding sentence with the exception of bilingual education. Defendants challenge Judge Deneweth's findings that special education and special education transportation are required by state law within the meaning of § 29. Plaintiffs challenge the judge's finding that they are not entitled to recover funding for bilingual education programs provided to the district's students. Neither party challenges the judge's findings regarding driver education and school lunch and supplemental milk programs. Because the parties do not challenge these latter findings and because we conclude that Judge Deneweth's findings regarding these services are supported by both the law and the record, we limit our discussion to those challenges brought by the parties.

A

SPECIAL EDUCATION AND SPECIAL EDUCATION
TRANSPORTATION

Defendants argue that special education and special education transportation are federally mandated programs, see 20 USC 1400 *et seq.*, 29 USC 794, 34 CFR 300.13(a) and (b)(13), 1979 AC, R 340.1701 *et seq.*, and, thus, they cannot be state-required services within the meaning of § 29. Judge Deneweth rejected defendants' arguments:

It is the recommendation of this Court that defendants' federal mandate argument be rejected. At the outset, it appears that the federal statutes are not mandatory in nature. Most importantly, whether or not the federal statutes are mandatory it is clear that the State of Michigan has chosen to create state mandated special education activities and services. Where activities or services are man-

dated by the State of Michigan, this Court is of the opinion the Headlee Amendment applies.

We agree with the conclusion reached by Judge Deneweth, although we reach this conclusion for different reasons.

In support of their argument, defendants rely on this Court's decision in *Birmingham & Lamphere School Dist v Sup't of Public Inst,* 120 Mich App 465; 328 NW2d 59 (1982), lv den 417 Mich 1100.19 (1983), where a panel of this Court upheld an administrative finding that the Birmingham School District was required to provide a program of noninstructional summer enrichment activities to an autistic child residing in that district. *Id.,* pp 473-476. After so doing, the Court rejected the district's argument that the Department of Education, by requiring the district to provide these services, had violated § 29.

> Even if an administrative interpretation of existing law which would require a unit of local government to increase its activities and services is covered by the Headlee Amendment, we do not believe requiring plaintiffs to implement a summer enrichment program violates Headlee. The decision to require plaintiffs to provide the needed program was based in large part on the federal statute, the Education for All Handicapped Children Act, 20 USC 1401 *et seq.,* because defendant's entitlement to a "free, appropriate public education" is based on federal as well as state law. By its own terms, the Headlee Amendment is inapplicable because it provides only that the state is prohibited from reducing its own proportion of the "costs of any existing activity or service required of units of local government *by state law.*" [*Id.,* p 477; emphasis in original.]

We decline to follow *Birmingham & Lamphere*

*School Dist.* Given the development of a body of federal case law interpreting the nature and scope of the federal legislation governing special education, we believe that a reexamination of the interplay between the federal legislation and Michigan law is warranted.

The Education of the Handicapped Act, 20 USC 1400 *et seq.,* confers upon disabled students an enforceable substantive right to public education in states participating in the federal program. *Honig v Doe,* 484 US 305, 310; 108 S Ct 592; 98 L Ed 2d 686 (1988). It also provides federal funding to aid state and local agencies in the education of disabled children. The receipt of such funding is conditioned upon a state's compliance with an extensive list of goals and procedures. *Hendrick Hudson Central School Dist Bd of Ed v Rowley,* 458 US 176, 179; 102 S Ct 3034; 73 L Ed 2d 690 (1982). However,

> [t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child. The Act expressly charges States with the responsibility of "acquiring and disseminating to teachers and administrators of programs for handicapped children significant information derived from educational research, demonstration, and similar projects, and [of] adopting, where appropriate, promising educational practices and materials." § 1413(a)(3). [*Id.,* p 207.]

In formulating the educational programs to be offered, participating states remain mindful that the act requires no more than a "basic floor of opportunity," *id.,* p 201, consisting of "access to specialized instruction and related services which

are individually designed to provide educational benefit to the handicapped child." *Id.* It does not require that the state provide programs that maximize the potential of the disabled child. *Id.,* p 197, n 21.

Art 3 of the School Code of 1976, MCL 380.1701 *et seq.*; MSA 15.41701 *et seq.,* also confers upon disabled students an enforceable substantive right to special education and related services. *Bay City Ed Ass'n v Bay City Public Schools,* 430 Mich 370, 377-378; 422 NW2d 504 (1988). This right exists separately from the right conferred by federal statute. Also, like its federal counterpart, Michigan law provides for funding to assist local units of government in the education of disabled students. See art 5 of the School Aid Act of 1979, MCL 388.1651 *et seq.*; MSA 15.1919(951) *et seq.* However, unlike federal law, Michigan law requires that special education programs and services provided by the state through local school districts must be designed "to develop the maximum potential of each handicapped person . . . ." MCL 380.1751(1); MSA 15.41751(1). In other words, Michigan law imposes a substantive standard prescribing the level of education to be accorded disabled children where federal law does not.

When the aforementioned state and federal statutes are read together, it becomes clear that the duties imposed on the state under federal law are of a lesser magnitude than those imposed under Michigan law, and that special education and special education transportation are "service[s] required of units of local government by state law." We reach this conclusion for two reasons. First, Michigan law obligates the state to provide a higher level of education than does the federal law. While the state's provision of programs designed to maximize the potential of each disabled

student satisfies the federally imposed obligation to provide a basic floor of opportunity, it cannot be said that compliance with the lesser federal obligation satisfies the more demanding state requirement. Second, the federal legislation confers rights and establishes goals and procedures in broad general terms. The creation and implementation of the programs and related services offered are left to the state and local units of government.

Accordingly, because state law imposes a stricter obligation on the state and its local units of government and because these governmental entities are charged with the duty of establishing and implementing specific programs and related services, we conclude that the special education programs and related services offered by plaintiffs are based in large part on Michigan law, not federal law. Section 29 therefore applies.

B

BILINGUAL EDUCATION

Section 1153 of the School Code of 1976 provides in pertinent part:

> The board of a school district having an enrollment of 20 or more children of limited English-speaking ability in a language classification in grades K to 12 shall establish and operate a bilingual instruction program for those children. [MCL 380.1153(1); MSA 15.41153(1).]

Funding for bilingual education is provided for by § 1641 of the School Aid Act of 1979. MCL 388.1641; MSA 15.1919(941).

Judge Deneweth found that bilingual education constituted a service required by state law where

an enrollment of twenty or more children of limited English-speaking ability in a language classification existed. He also found that bilingual education was funded by categorical aid and subject to the dictates of § 29. However, Judge Deneweth found that in the 1978-79 base year plaintiff district operated a permissive bilingual program and not a mandated bilingual program because the district did not have an enrollment of twenty or more students in any particular language classification in its program. Accordingly, Judge Deneweth found that there was no state-financed portion of a mandated bilingual program in the base year 1978-79 and that defendants were not required by § 29 to provide any funding to plaintiff district in the years subsequent to 1978-79. These findings are supported by both the law and the record.

On appeal, plaintiffs argue that in the fiscal year 1979-80 their enrollment was such that they were required by law to operate a bilingual education program. Plaintiffs further argue that this program, mandated in 1979-80, constituted a "new activity or service" within the meaning of § 29. We find no merit in plaintiffs' argument.

Section 29 provides in pertinent part:

> A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.

To interpret the phrase "activity or service" as plaintiffs ask would be inconsistent with the plain language of § 29, which specifically refers to new activities and services *beyond* that required by existing *law*. At the time § 29 was ratified, state

law required school districts to provide bilingual education under certain prescribed circumstances. Therefore, because a bilingual education requirement existed at the time of the ratification, it cannot be said that the requirement imposed an obligation on plaintiff district to provide an additional service not previously required by law.

Plaintiffs' interpretation also runs contrary to the intent of those who ratified the amendment. The Headlee Amendment was intended to prevent the Legislature from enacting ever-increasing state laws and regulations which create new and increasing financial burdens on local units of government, unaccompanied by any financial support to alleviate those burdens. The message sent from the voters to the Legislature was clear: If the Legislature desired to enact new legislation which required a local unit of government to provide a new activity or service, then the state must fund any resulting increase in costs which were necessary for the local unit of government to discharge its duties. Clearly, because the Legislature enacted no new legislation imposing any new obligation on plaintiff district, an application of § 29 was not intended.

For the reasons set forth above, we reject plaintiffs' argument as meritless.

### III

In the preceding section of this opinion we concluded, on the facts before us, that the state's funding obligations under § 29 extended to the following services: special education, special education transportation, driver's education, and school lunch and supplemental milk programs. The question now arises: What constitutes the "necessary costs" of these services?

The state's funding obligation under § 29 is limited to providing funds to reimburse a district for a portion of the costs necessarily incurred in the provision of a state-required service or activity. In this manner, § 29 guarantees that the state will provide funding that is essential or indispensable to the provision of such services or activities. *Durant*, 424 Mich 391.

To ascertain what constitutes necessary cost, the trier of fact must first determine the total costs incurred by a school district in providing the required service or activity, including costs reimbursed by federal funding. Once the total costs have been determined, the trier of fact must then ascertain what portion of these total costs were necessary costs. To do this, the trier of fact must ascertain the net costs of the service or activity provided by the local unit of government. *Durant*, 424 Mich 390-391. Net costs are defined as the actual costs that would be incurred by the state if the state were to provide the service or activity itself. The measure of actual costs is to be determined by the pressures of the marketplace. *Durant*, 424 Mich 391. After ascertaining the necessary costs in this manner, the trier of fact must ascertain the total amount of categorical aid received for this service or activity by the district. Total categorical aid received is then divided by total necessary costs. The percentage arrived at constitutes "the state financed portion of the necessary costs." Categorical aid shall not be reduced below this level paid by the state in 1978-79. *Durant*, 424 Mich 391-392.

Cognizant of these principles, we now address the specific findings of Judge Deneweth.

A

SPECIAL EDUCATION

Judge Deneweth found that, for purposes of special education funding, necessary costs are those costs incurred over and above or in addition to the costs incurred in providing a regular education program. We disagree with the judge's finding. Were the state to provide the special education services itself, it would incur in actual costs more than just those costs over and above the costs incurred in providing a regular education program. See MCL 388.1651(4)(a); MSA 15.1919(951)(4)(a). Accordingly, Judge Deneweth's finding is inconsistent with the definition of necessary costs employed by our Supreme Court in *Durant.*

Judge Deneweth next found that the services of a special education director and a secretary to the director were necessary to the operation of plaintiff district's special education program and that the costs of these services were necessary costs. On the basis of the record before us, we conclude that these findings are not clearly erroneous. MCR 2.613(C). The costs of employing a special education director and a secretary for the director may be included in the formula for determining total necessary costs and the state's funding obligation.

Judge Deneweth also found "that necessary costs for special education should include indirect costs." We agree. Were the state to provide the special education services itself, indirect costs would be incurred as part of the actual costs of maintaining the program. These costs may also be included in the formula for determining total necessary costs and the state's funding obligation.

Lastly, Judge Deneweth found that the funds

provided to the Macomb Intermediate School District by the state to reimburse the Intermediate School District for the cost of providing special education programs and related services should not be attributed to plaintiff district. We agree. Once a local school district contracts with an intermediate school district for the delivery of special education programs and related services, the students of the local school district become students of the intermediate district for all purposes including the calculation of state aid. *Bay City Ed Ass'n,* 430 Mich 378.

B

SPECIAL EDUCATION TRANSPORTATION

Plaintiff district determined the total cost of each component of its special education transportation budget using a proration formula based on the percentage of miles that special education buses were driven compared to the total number of miles driven by all buses in the district. Judge Deneweth found that this "proration method employed . . . is a reasonable method of accounting for special education transportation costs under the circumstances and demonstrates, to the Court's satisfaction, the amount of necessary costs incurred by Fitzgerald for the provision of special education transportation." Defendants argue that where the actual cost of providing any component of special education transportation may be ascertained with certainty those actual costs should be used in calculating necessary costs. Defendants further argue that only where actual costs may not be ascertained with certainty may plaintiffs' proration method be used. We agree. Defendants' approach more closely conforms to the definition of

necessary costs as set forth by the Supreme Court in *Durant*. However, we note that the actual costs incurred by plaintiff district are not necessarily necessary costs. What portion of those costs incurred by plaintiff district in providing special education transportation constitutes necessary costs must be determined by ascertaining what the actual cost to the state would be if it were to provide those same services. To the extent that Judge Deneweth concluded to the contrary, his conclusion is erroneous.

After making his finding in favor of plaintiff district's proration method of calculating necessary costs, Judge Deneweth found that a school district may recover the "reasonable costs" of providing a particular service required by state law. He then found that the salaries paid to plaintiff district's bus drivers were reasonable and, therefore, allowable in toto as necessary costs. Defendants challenge the judge's findings and argue that the salaries paid by plaintiff district were excessive. Whether these salaries are excessive is a question to be answered after a proper application of a definition of necessary costs as set forth by our Supreme Court in *Durant*. It does not appear from the record that Judge Deneweth employed this definition in arriving at his determination that the salaries were "reasonable" and "necessary."

C

DRIVER'S EDUCATION

MCL 257.811(3); MSA 9.2511(3) requires local school districts to offer driver's education courses. See also *Sharp v Huron Valley Bd of Ed,* 112 Mich App 18; 314 NW2d 785 (1981). A school district

may satisfy this statutory requirement by providing one of several programs, including a "thirty and six program," consisting of thirty hours of classroom instruction and six hours of on-street, behind-the-wheel instruction, and a "range program," consisting of classroom instruction and up to four hours of behind-the-wheel instruction to take place within a restricted area, such as a parking lot, where a single instructor gives directions simultaneously to several students driving separate vehicles. Plaintiff district operates the former, more expensive program and sought a calculation of necessary costs based upon the costs of funding this program. Defendants sought a calculation of necessary costs based on the costs of providing the less expensive latter program. Judge Deneweth found:

> At the time the Headlee Amendment was adopted, defendant state had allowed and reimbursed Fitzgerald for a 30 and 6 program. Defendant state cannot successfully argue the school district should have been operating a less costly program and reduce the amount reimbursed to Fitzgerald below that reimbursed in the base year. The Headlee Amendment was intended to prevent the state to cut funding to local governmental agencies below the level allowed in 1978. Therefore, the Court is of the opinion the costs of a 30 and 6 program should be allowed under the Headlee Amendment.

We believe that which driver education program plaintiff district offered or should have offered is irrelevant. Section 29 requires the state to provide funding only to the extent that such funding is essential or indispensable to the discharge of its duty to deliver a service or activity required by state law. *Durant,* 424 Mich 391. Accordingly, the question to be answered by the trier of fact is this:

How much does it cost to provide a level of instruction that ensures that a student is sufficiently trained to safely operate a motor vehicle on a Michigan roadway? In answering this question, the trier of fact should not equate actual costs incurred by a district with necessary costs, unless an application of the facts of the case before the factfinder to the definition of necessary costs permits such an equation. In the instant case, there is substantial evidence in the record that plaintiff district could satisfy the requirements of MCL 257.811(3); MSA 9.2511(3) in less costly ways. If less costly means exist, then it cannot be said that all costs incurred by plaintiff district in the operation of its "thirty and six program" are necessary costs within the meaning of § 29. Judge Deneweth's conclusions to the contrary are erroneous.

### D

#### SCHOOL LUNCH AND SUPPLEMENTAL MILK PROGRAM

Judge Deneweth adopted plaintiff district's proration formula for apportioning the costs of providing all lunches between those lunches required by state law and those lunches not required by state law. Judge Deneweth was correct to do so, on the facts of this case. However, it once again appears that Judge Deneweth equated the actual expenditures made by the district with necessary costs. Such a finding is contrary to the dictates of *Durant,* 424 Mich 391.

### E

#### REMAND

The instant case is remanded to Judge Denew-

eth. On remand, Judge Deneweth shall: (1) determine the necessary costs of providing the above-mentioned services in a manner consistent with this opinion, (2) determine what proportion of those necessary costs were reimbursed by the state with categorical aid, (3) determine whether the state violated its funding obligations under § 29, and (4) determine the dollar amount of any under-funding occurring in violation of § 29.

## IV

Having examined the nature and scope of the state's funding obligation under § 29, we now turn to a discussion of the effect on this obligation of Const 1963, art 5, § 20, the constitutional provision that empowers the Governor to balance the state's budget by reducing expenditures authorized by appropriation when faced with a shortfall in anticipated revenue collections. The specific question before us is whether reductions in funding for school aid made by executive order pursuant to art 5, § 20 must be disregarded when determining the amount of funding received by a school district for purposes of art 9, § 29.

Art 5, § 20 provides as follows:

> No appropriation shall be a mandate to spend. The governor, with the approval of the appropriating committees of the house and senate, shall reduce expenditures authorized by appropriations whenever it appears that actual revenues for a fiscal period will fall below the revenue estimates on which appropriations for that period were based. Reductions in expenditures shall be made in accordance with procedures prescribed by law. *The governor may not reduce expenditures* of the legislative and judicial branches or *from funds constitutionally dedicated for specific purposes.* [Emphasis added.]

As we begin our discussion of the relationship between art 5, § 20 and art 9, § 29, we are mindful of two basic principles of constitutional construction. First, every statement contained within a state constitution must be interpreted in light of the whole document. Second, no fundamental constitutional principle shall be construed so as to nullify or substantially impair another, all fundamental constitutional principles being of equal dignity. *People v Blachura,* 390 Mich 326, 333; 212 NW2d 182 (1973), overruled in part on other grounds *People v Cooke,* 419 Mich 420, 433; 355 NW2d 88 (1984).

In *Durant,* 424 Mich 392, our Supreme Court expressly stated that § 29 unambiguously forbids the state from reducing categorical aid below that portion paid by the state in 1978-79. We conclude, therefore, that a specific level of categorical aid is established by constitutional mandate. Because categorical aid is allocated for an identified, state-mandated service or activity, and because a specific level of funding is guaranteed by § 29, we conclude that categorical aid constitutes "funds constitutionally dedicated for specific purposes" within the meaning of art 5, § 20. Therefore, categorical aid is exempt from executive order reduction. To conclude otherwise would permit art 5, § 20 to operate in such a manner so as to substantially impair a local unit of government's constitutional right to a particular level of funding and thwart the intention of those who ratified § 29 to ensure an adequate level of funding for services and activities required by the Legislature or a state agency.

Moreover, we believe that our interpretation of art 5, § 20 does not impair the state's ability to maintain a balanced budget for two reasons. First, as our Supreme Court stated in *Michigan Ass'n of*

*Counties v Dep't of Management & Budget,* 418 Mich 667, 685; 345 NW2d 584 (1984), reductions in the expenditures of all state agencies are not required to be proportionate. Second, and more important, while the Governor may not reduce the level of categorical aid below the level paid in 1978-79 by executive order, the Governor may reduce appropriations for unrestricted school aid.

In light of the foregoing, we hold that it would be error to exclude reductions in categorical aid in the formula for determining the amount of funding received by plaintiff district for purposes of § 29.

V

Not only may the Governor not reduce categorical funding for state-mandated services and activities below the level paid in 1978-79, but the Legislature may not reduce the same funds by operation of the "base revenue reduction" provision set forth in MCL 388.1621(4); MSA 15.1919(921)(4). *Durant,* 424 Mich 391-392. The provision is unconstitutional as applied to categorical funding for state-mandated services or activities. However, we find nothing in § 29 that would prohibit the state from recapturing the total base revenue deduction from other forms of state aid supplied to the school district, including categorical aid supplied for programs not mandated by the state.

VI

One major issue remains. Having determined the scope of defendants' funding obligation to plaintiff district, defined the components of necessary costs incurred by plaintiff district in the provision of state-required services and activities,

and set forth a method by which defendants' obligation to plaintiff district may be ascertained in dollar amounts, we now turn to a discussion of the remedies sought by plaintiffs.

### A

#### COSTS AND ATTORNEY FEES

Plaintiffs sought an award of costs, including reasonable attorney fees, pursuant to Const 1963, art 9, § 32. Defendants argued that attorney fees are not a component of costs. Judge Deneweth rejected defendants' argument. We do likewise.

Section 32 provides as follows:

> Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit.

The question we now address, like so many of those raised in the instant case, is one of first impression. We are aided in our task of interpreting § 32 by two established rules of constitutional construction:

> The primary rule is the rule of "common understanding" described by Justice COOLEY:
>
> "A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, *the intent to be arrived at is that*

*of the people,* and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be conveyed.' [Cooley's Constitutional Limitations (6th ed), p 81]." [Emphasis in original.]

\* \* \*

A second rule is that to clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered. [*Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971).]

The Headlee Amendment was ratified, in part, because of voter concern over "ensuring control of local funding and taxation by the people most affected, the local taxpayers." *Durant,* 424 Mich 383. By conferring standing on a local taxpayer to bring a suit, § 32 furthers the voters' efforts to link funding, taxes, and control. To construe the term "cost" as defendants suggest would diminish the voters' efforts to establish this link. As the history of the instant case demonstrates, litigation brought pursuant to § 32 can be complex and protracted. The financial outlay needed for maintaining a suit of this nature can be extremely burdensome and inhibitive. Attorney fees compose a substantial portion of such outlays. Without the ability to recoup all costs of maintaining an action to enforce the Headlee Amendment, including reasonable attorney fees, the average taxpayer could not withstand the financial obligation incurred as a result of exercising that taxpayer's right to bring suit. Accordingly, we conclude that, in ratifying the Headlee Amendment, "the great mass of people themselves" intended the term "cost" to include reasonable attorney fees.

On remand, Judge Deneweth shall determine an appropriate award of costs to include reasonable attorney fees should he determine that defendants underfunded plaintiff district in violation of § 29.

### B

### MANDAMUS

Plaintiffs seek a writ of mandamus to enforce § 29. A determination of whether mandamus should issue is premature. As is clear from our discussion of Judge Deneweth's findings, there remain factual questions to be resolved. Where factual issues exist, mandamus generally will not lie. *Powers v Sec of State,* 309 Mich 530; 16 NW2d 62 (1944). Accordingly, we reserve this issue until Judge Deneweth has the opportunity to make additional findings consistent with this opinion.

### VII

The instant action is remanded to the trier of fact. On remand, the trier of fact shall make additional findings consistent with this opinion. Such findings of fact and other determinations shall be made within six months of the release of this opinion. Thereafter, a transcript of such findings shall be transmitted to this Court within twenty-eight days. We retain jurisdiction.