COUNTY ROAD ASSOCIATION OF MICHIGAN v DEPARTMENT
OF TRANSPORTATION

Docket No. 46037. Submitted August 29, 1979, at Lansing.—Decided
December 6, 1979.

The County Road Association of Michigan and others brought an
original action in the Court of Appeals for mandamus to
prevent the Department of Transportation from financing a
vehicle emissions testing program with funds derived from fuel
and weight tax revenues. The program was to be financed with
money allocated from the State Trunkline Fund and the Com-
prehensive Transportation Fund, both of which are funded
from the General Transportation Fund. The plaintiffs claim
that the General Transportation Fund, which is comprised of
fuel and weight tax revenues, is restricted in its use to purposes
listed in the Michigan Constitution and that the proposed
testing program does not qualify for funding from the General
Transportation Fund. *Held:*

The proposed testing program is not a "transportation" or
"comprehensive transportation" use as listed in the constitu-
tional provision controlling the use to which money in the
General Transportation Fund is put or as defined by statute.
The Department of Transportation may not, therefore, finance
the program from the State Trunkline Fund or the Comprehen-
sive Transportation Fund.

Mandamus granted.

1. CONSTITUTIONAL LAW — TAXATION — FUEL AND WEIGHT TAXES —
   TRANSPORTATION FINANCING.

Funds derived from fuel and weight tax revenues may be used
only for the specific transportation purposes listed in the consti-
tutional provision which controls the use of such revenues; a
proposed Department of Transportation study of motor vehicle
emissions which has not been shown to have any substantial
"transportation" or "comprehensive transportation" purposes,
as those terms are defined by law, may not be financed by fuel

REFERENCES FOR POINTS IN HEADNOTES
[1] 71 Am Jur 2d, State and Local Taxation §§ 20, 59, 616 *et seq.*
[2] 52 Am Jur 2d, Mandamus §§ 4, 32.

and weight tax revenues (Const 1963, art 9, § 9; MCL
247.660c[8]; MSA 9.1097[10d][8]).

2. MANDAMUS — EQUITY.

Mandamus is not a matter of right; the issuance of a writ of
mandamus is discretionary and is governed by principles of
equity.

*Downs, Pirich & Downs, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Louis J. Caruso,
Francis J. Carrier* and *Patrick McElmurry,* Assistants Attorney General, for defendant.

Amicus Curiae: *John C. Dernback,* for the American Lung Association of Michigan.

Before: J. H. GILLIS, P.J., and R. B. BURNS and
N. J. KAUFMAN, JJ.

R. B. BURNS, J. Plaintiffs brought this original
proceeding for mandamus, pursuant to MCL
600.4401; MSA 27A.4401, to prevent defendant
Michigan Department of Transportation from
financing a vehicle testing program with funds
derived from fuel and weight tax revenues. The
program is designed primarily to determine statistically the actual pollutants being emitted from
Michigan's light duty vehicle fleet. An appropriation of $1,000,000 for the fiscal year ending September 30, 1979, apparently was made for the
study with the cost of the study being split between the State Trunkline Fund and the Comprehensive Transportation Fund, in the same percentages as these share in the General Transportation
Fund. 1979 PA 46. The General Transportation
Fund is comprised solely of funds restricted under
Const 1963, art 9, § 9. MCL 247.660; MSA
9.1097(10). Plaintiffs maintain that although the

program's prospective study of air pollution from privately owned vehicles may be socially desirable, the funding of such a study from gas and weight tax revenues is barred by Const 1963, art 9, § 9.

In support of their contention that an appropriation of the restricted funds for the program is unlawful, plaintiffs note the language and the history of Const 1963, art 9, § 9.

As first established, Const 1963, art 9, § 9 was as follows:

"All specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles shall, after the payment of necessary collection expenses, be used exclusively for *highway purposes* as defined by law." (Emphasis added.)

In 1977, the Michigan Supreme Court held that the term "highway purposes" had a broad legislative definition and that the Legislature was acting within its constitutional powers when it defined highway purposes to include public transportation services. *Advisory Opinion of Constitutionality of 1976 PA 295, 1976 PA 297,* 401 Mich 686; 259 NW2d 129 (1977). Soon thereafter, the right of the Legislature to define highway purposes was eliminated by constitutional amendment. As amended in 1978, Const 1963, art 9, § 9 now provides in part:

"All specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and to propel aircraft and on registered motor vehicles and aircraft shall, after the payment of necessary collection expenses, be used *exclusively for transportation purposes as set forth in this section.*

*"Not less than 90 percent* of the specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles shall, after the payment of necessary collection expenses, be used exclusively for the transportation purposes of planning, administering, constructing, reconstructing, financing, and maintaining state, county, city, and village *roads, streets, and bridges* designed primarily for the use of motor vehicles using tires, *and reasonable appurtenances* to those state, county, city, and village roads, streets, and bridges.

*"The balance,* if any, of the specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles, after the payment of necessary collection expenses; 100 percent of the specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel aircraft and on registered aircraft, after the payment of necessary collection expenses; and not more than 25 percent of the general sales taxes, imposed directly or indirectly on fuels sold to propel motor vehicles upon highways, on the sale of motor vehicles, and on the sale of the parts and accessories of motor vehicles, after the payment of necessary collection expenses; shall be used *exclusively for the transportation purposes of comprehensive transportation purposes as defined by law."* (Emphasis added.)

The definition of comprehensive transportation purposes · is found in MCL 247.660c(8); MSA 9.1097(10d)(8):

"'* * * 'comprehensive transportation purpose' means the movement of people and goods by publicly or privately owned water vehicle, bus, railroad car, rapid transit vehicle, taxicab, aircraft, or other conveyance which provides general or special service to the public,

but not including school buses or charter or sight-seeing service."

Plaintiffs assert that because the proposed study deals primarily with vehicles it cannot be viewed as being a part of the planning or administering of roads, streets and bridges. Plaintiffs argue that to hold otherwise would be to negate entirely the 1978 amendment to Const 1963, art 9, § 9, as there would then be no difference between the scope of the amended language and that of the provision's original language.

Plaintiffs also assert that since the study is designed primarily to study the private automobile fleet the vehicle testing program does not fall within the definition of comprehensive transportation purposes. Plaintiffs point to the omission of the term "privately owned automobile" from MCL 247.660c(8); MSA 9.1097(10d)(8), and the inclusion of specific vehicles such as taxicabs and rapid transit vehicles which are public transportation services.

Defendant, on the other hand, maintains that the Court should not stop the proposed expenditure because the vehicle testing program is necessary to insure that the state will not lose Federal funds, including funds for its highways, which are contingent upon the state's meeting the requirements of the Federal Clean Air Act Amendments of 1977. 42 USC 7401 *et seq.* Defendant argues that the appropriation of restricted funds for the program is permissible because vehicle emissions, which will be studied by the program, are elements to be considered in the planning and design of roads, streets, bridges and comprehensive transportation modes. Defendant claims that because there may be financial sanctions imposed if the state fails to comply with the Clean Air Act, it is

necessary for highway planners to know the level of vehicle emissions and to be able to reasonably anticipate future funding of highway projects.

Defendant further argues that the fact that the Legislature funded the program after being fully advised of its nature shows the legislative intent to include the study within the term "comprehensive transportation purpose". Additionally, light duty vehicles, the subjects of the study, include taxicabs and vans, which are expressly included within the statutory definition of "comprehensive transportation purpose". Defendant anticipates that high levels of vehicle emissions may lead to restrictions on private passenger vehicles which will necessarily affect the planning of public mass transit.

We are convinced that the language of the newly amended constitutional provision, Const 1963, art 9, § 9, limits the use of the restricted funds to the specific transportation purposes listed therein. The restricted funds may be spent only for planning, administering, constructing, reconstructing, financing, and maintaining state, county, city, and village roads, streets, and bridges and the reasonable appurtenances thereto or for comprehensive transportation purposes as defined by law.

The purpose of the vehicle testing program, as stated in the budget request submitted by defendant, is to produce for the state an "information base on the emissions control system maintenance level in its privately owned fleet. Such information is needed to design a reasonable I/M [inspection and maintenance] program keyed to the severity of Michigan's air pollution problem".

Any impact which the program may have on the planning of roads, streets and bridges or on comprehensive transportation will be indirect and a

chance by-product of the study. The study will deal with the maintenance of emission control devices. While defendant has shown that high levels of emissions may lead to a mandatory inspection and maintenance program or to the loss of Federal funds, it has not shown that the study has any substantial "transportation" or "comprehensive transportation" purposes.

No challenge has been made to the Court's power to issue a writ of mandamus in the present action. Mandamus is not a matter of right; the issuance of a writ of mandamus is discretionary and is governed by principles of equity. *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 401 Mich 37, 43-44; 257 NW2d 73 (1977). After having weighed all the relevant considerations we find that plaintiffs' petition for a writ of mandamus should be granted. Accordingly, a writ of mandamus shall issue prohibiting defendant from expending funds appropriated for the vehicle testing program from the State Trunkline Fund and the Comprehensive Transportation Fund.