MICHIGAN ROAD BUILDERS ASSOCIATION v DEPARTMENT OF
MANAGEMENT AND BUDGET

Docket No. 136992. Submitted February 6, 1992, at Lansing. Decided
December 29, 1992, at 9:10 A.M. Leave to appeal sought.

 The Michigan Road Builders Association and others brought an
action in the Ingham Circuit Court against the Department of
Management, and Budget and the Department of Treasury,
seeking declaratory and injunctive relief to prohibit the state
from paying settlements and judgments that arise from claims
under the defective highway exception to governmental immu-
nity, MCL 691.1402; MSA 3.996(102), with funds that are
restricted to transportation purposes by Const 1963, art 9, § 9.
The court, Lawrence M. Glazer, J., granted summary disposi-
tion for the plaintiffs, finding that the state was precluded by
art 9, § 9 from paying such tort judgments and settlements
with the restricted funds. The court also found that the uncon-
stitutional portion of MCL 691.1402; MSA 3.996(102) was sever-
able from the remainder by striking the word "restricted" from
the sentence in the statute that permitted the use of restricted
funds to pay for tort judgments. The defendants appealed.

 The Court of Appeals held:

 1. The court erred in holding that Const 1963, art 9, § 9
prohibits the use of restricted funds for the payment of tort
judgments resulting from claims under the defective highway
exception to governmental immunity.

 2. The people, in adopting the 1978 amendment of art 9, § 9,
did not intend to prevent the Legislature from using restricted
funds to pay tort judgments. The intent was to limit the
amount of restricted funds that could be used for mass trans-
portation.

 3. The court erred in assuming that the purposes listed for
the State Trunk Line Fund, MCL 247.661; MSA 9.1097(11), do
not include the payment of tort judgments.

 4. The authority in art 9, § 9 for the payment of tort judg-

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges §§ 103, 340-342.
See ALR Index under Governmental Immunity or Privilege; High-
ways and Streets.

ments flows from a reasonable interpretation of the listed uses of restricted funds contained in art 9, § 9. Although art 9, § 9 does not expressly state whether restricted funds may be used to pay tort judgments resulting from defective roads, tort judgments and settlements fit within the meaning of the transportation purposes listed in art 9, § 9 for which the restricted funds may be used.

Reversed.

1. CONSTITUTIONAL LAW — GOVERNMENTAL IMMUNITY — DEFECTIVE HIGHWAYS — TORT JUDGMENTS — RESTRICTED FUNDS.

The state is not prohibited from paying settlements and judgments that arise from claims under the defective highway exception to governmental immunity with funds that are restricted to transportation purposes by Const 1963, art 9, § 9 (MCL 691.1402; MSA 3.996[102]).

2. CONSTITUTIONAL LAW — GOVERNMENTAL IMMUNITY — DEFECTIVE HIGHWAYS — TORT JUDGMENTS — RESTRICTED FUNDS.

The general intent of the people in adopting the 1978 amendment of Const 1963, art 9, § 9 was to limit the amount of funds restricted to transportation purposes that could be used for mass transportation; the people did not intend to prevent the Legislature from using the restricted funds to pay tort judgments that arise from claims under the defective highway exception to governmental immunity (MCL 691.1402; MSA 3.996[102]).

3. CONSTITUTIONAL LAW — GOVERNMENTAL IMMUNITY — DEFECTIVE HIGHWAYS — TORT JUDGMENTS — TRANSPORTATION PURPOSES — RESTRICTED FUNDS.

Tort judgments and settlements resulting from claims under the defective highway exception to governmental immunity fit within the meaning of the transportation purposes of planning, administering, constructing, reconstructing, financing, and maintaining for which restricted funds may be used exclusively pursuant to Const 1963, art 9, § 9; there is no requirement that these purposes be carried on properly before restricted funds may be used (MCL 691.1402; MSA 3.996[102]).

*Miller, Canfield, Paddock & Stone* (by *Lawrence D. Owen, Kevin J. Moody,* and *Clifford T. Flood*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, and *Patrick F. Isom,* Assistant Attorney General, for the defendants.

Before: HOLBROOK, JR., P.J., and GRIFFIN and MARILYN KELLY, JJ.

HOLBROOK, JR., P.J. Plaintiffs sought declaratory and injunctive relief in the Ingham Circuit Court to prohibit the state from paying settlements and judgments that arise from claims under the defective highway exception to governmental immunity, MCL 691.1402; MSA 3.996(102) (hereafter § 2), with funds that are restricted to transportation purposes by Const 1963, art 9, § 9. Plaintiffs include individuals and corporations who pay gasoline and vehicle taxes, and who construct or maintain public roads and bridges financed by those taxes. Ruling in favor of the plaintiffs, the circuit court held that the state was precluded by art 9, § 9 from paying tort judgments and settlements on claims arising from defective highways with these restricted funds. The court also found the unconstitutional portion of § 2 to be severable from the remainder of § 2 by striking the word "restricted" from the sentence in § 2 that permitted the use of restricted funds to pay for tort judgments. Defendants appeal as of right. We reverse.

Taxes collected on gasoline, diesel motor fuel, and motor vehicle fees are referred to as restricted funds because the Michigan Constitution limits their use. Const 1963, art 9, § 9 states in pertinent part:

All specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and to propel aircraft and on registered motor vehicles and aircraft shall, after the payment of necessary collection expenses,

be used exclusively for transportation purposes as set forth in this section.

Not less than 90 percent of the specific taxes, except general sales and use taxes and regulatory fees, imposed directly or indirectly on fuels sold or used to propel motor vehicles upon highways and on registered motor vehicles shall, after the payment of necessary collection expenses, be used exclusively for the transportation purposes of planning, administering, constructing, reconstructing, financing, and maintaining state, county, city, and village roads, streets, and bridges designed primarily for the use of motor vehicles using tires, and reasonable appurtenances to those state, county, city, and village roads, streets, and bridges.

Section 9 further provides that the balance of these taxes are to be used for "comprehensive transportation purposes." Accordingly, the Legislature has established the Michigan Transportation Fund to hold these taxes. The Michigan Transportation Fund apportions ten percent of its money to the Comprehensive Transportation Fund, which finances public mass transportation, and additional money to the State Trunk Line Fund. See MCL 247.660; MSA 9.1097(10).

The defective highway exception to governmental immunity provides in pertinent part:

Any judgment against the state based on a claim arising under this section from acts or omissions of the state transportation department shall be payable only from restricted funds appropriated to the state transportation department or funds provided by its insurer. [MCL 691.1402; MSA 3.996(102).]

The issue presented on appeal is whether § 2 of the governmental immunity act is unconstitutional under art 9, § 9 of the Michigan Constitution. This is an issue of first impression.

In order to follow the circuit court's reasoning in this case, a brief history of art 9, § 9 is necessary. Originally, the restricted funds were to be used for "highway purposes." Const 1908, art 10, § 22. When our new constitution was written in 1963, the language was changed to "highway purposes as defined by law." Const 1963, art 9, § 9. This section gave the Legislature the power to define the meaning of the term "highway purposes." *Advisory Opinion on Constitutionality of 1976 PA 295, 1976 PA 297,* 401 Mich 686, 705-706; 259 NW2d 129 (1977). The 1978 amendment of art 9, § 9 eliminated the power of the Legislature to define highway purposes. *Co Rd Ass'n of Michigan v Dep't of Transportation,* 94 Mich App 242, 244; 288 NW2d 382 (1979). The 1978 amendment listed specifically the purposes designated for use of the restricted funds: "the transportation purposes of planning, administering, constructing, reconstructing, financing, and maintaining."

The circuit court examined the history of art 9, § 9 together with § 2 of the governmental immunity act in reaching its decision. The court noted that the Legislature created the defective highway exception to governmental immunity in 1964, when the Legislature still possessed the power to define "highway purposes." The court recognized that § 2 of the governmental immunity act provides that judgments against the state based on a claim arising from a defective highway are payable only from the restricted funds designated in art 9, § 9 or from funds provided by the highway department's insurer. The court then concluded that when the legislative power to define the meaning of highway purposes was eliminated by the 1978 amendment of art 9, § 9, the people of this state did not intend for the restricted funds to

pay tort damages with regard to claims brought under the defective highway exception.

The court supported its conclusion by comparing the language of art 9, § 9 with the list of purposes for the State Trunk Line Fund, MCL 247.661; MSA 9.1097(11). The court compared this list of purposes, together with the provision in § 2 of the governmental immunity act providing for payment of tort judgments from the restricted funds, with the list of purposes enumerated in art 9, § 9. The court reasoned that with the ratification of the 1978 amendment of art 9, § 9, the people intended for the Legislature to stop paying tort judgments in cases arising from claims under § 2 of the governmental immunity act with restricted funds because the people did not include a specific reference to that type of payment in the amended section.

We believe the circuit court erred in assuming that the purposes listed for the State Trunk Line Fund do not include the payment of tort judgments. The Legislature enacted that statute before abrogating the state's governmental immunity. When the Legislature later enacted the defective highway exception to governmental immunity and provided that judgments awarded thereunder were to be paid out of the restricted funds, it did not amend the language of MCL 247.661; MSA 9.1097(11) to specifically include tort judgments. Because that statute lists the uses of restricted funds in order of priority, it is logical to conclude that the Legislature believed tort judgments were included in one of the purposes listed in MCL 247.661; MSA 9.1097(11). We prefer to read MCL 247.661; MSA 9.1097(11) and MCL 691.1402; MSA 3.996(102) together as one law because they relate to the same subject, even though they contain no reference to one another. *Crawford Co v Secretary*

*of State,* 160 Mich App 88, 95; 408 NW2d 112 (1987).

In passing the governmental immunity act in 1964, the Legislature most likely intended that payment for tort judgments be included under MCL 247.661(d); MSA 9.1097(11)(d), which provided at that time that the money allocated to the State Highway Department by the Motor Vehicle Highway Fund, MCL 247.660; MSA 9.1097(10),

> shall be transferred to the state trunk line fund . . . and used for the following highway purposes in the following order of priority:
>
> *   *   *
>
> (d) For the total operating expenses of the state highway department for each fiscal year as appropriated by the legislature.[1]

Indeed, the Legislature appropriated money for these tort judgments both before and after the 1978 amendment of art 9, § 9.[2] A consistent interpretation of a statute by those charged with the duty of executing it ought not be overruled without cogent reasons. *Central Advertising Co v Dep't of Transportation,* 162 Mich App 701, 706; 413 NW2d 479 (1987). Consequently, we disagree with the circuit court's conclusion that art 9, § 9 prohibits the use of restricted funds for payment of tort judgments resulting from claims under the defective highway exception. Hence, we must determine whether art 9, § 9 authorizes the use of restricted funds to pay tort judgments and settlements arising from claims under the defective highway exception to governmental immunity.

[1] See 1957 PA 262.

[2] See, for example, 1966 PA 311, § 2(e); 1967 PA 250, § 2(e); 1968 PA 228, § 15; 1969 PA 236, § 14; 1970 PA 81, § 17; 1971 PA 114, § 18; 1972 PA 245, § 18; 1973 PA 124, § 27; 1974 PA 235, § 29; 1975 PA 253, § 14; 1976 PA 246, § 11; 1977 PA 126, § 1; 1978 PA 10, § 1; 1978 PA 127, § 11; 1978 PA 468, § 12; 1979 PA 46, § 12; 1980 PA 363, § 11.

Our primary duty when interpreting constitutional provisions is to ascertain the purpose and intent of the provision at issue. *White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979); *Crawford Co, supra.* The intent to be determined is that of the people who adopted the constitutional provision. *Michigan Farm Bureau v Secretary of State,* 379 Mich 387, 390-391; 151 NW2d 797 (1967); *Durant v Dep't of Ed (On Second Remand),* 186 Mich App 83, 117-118; 463 NW2d 461 (1990). To clarify meaning, the circumstances surrounding the adoption of a constitutional provision and the purpose sought to be accomplished may be considered. *Committee for Constitutional Reform v Secretary of State,* 425 Mich 336, 340; 389 NW2d 430 (1986); *Durant, supra,* p 118.

The 1978 amendment of art 9, § 9 began with House Joint Resolution F, which put the issue on the November 1978 ballot as Proposal M. The ballot stated that the purpose of Proposal M was

to allocate at least 90% of gas tax revenues for general road purposes and the remainder for other transportation purposes and to replace state highway commission with a transportation commission. [See OAG, 1983-1984, No 6132, pp 59, 62 (March 7, 1983).]

The amendment would "[p]rovide that at least 90% of gas and license tax revenue be used exclusively for general road purposes." *Id.* The remainder was to be used "exclusively for other transportation purposes." *Id.*

The people approved Proposal M on the basis of the description above and the language of the amendment, which was also provided to them. Thus, the people's understanding of Proposal M was based in part on this description. The descrip-

tion does not indicate that the people intended to prevent the Legislature from using restricted funds to pay tort judgments. It indicates that at least ninety percent of the restricted funds will be used for "general road purposes" with the remainder used for "other transportation purposes."

"General road purposes" in the amendment referred to spending for roads, while "other transportation purposes" referred to spending for mass transportation.[3] The amendment limited the amount of restricted funds that could be used for mass transportation. The 1978 amendment, therefore, was adopted as a compromise between private companies involved in building and maintaining our highways and proponents of mass transportation. See *Southeastern Michigan Transportation Authority v Secretary of State,* 104 Mich App 390, 403-404, 304 NW2d 846 (1981).

Having determined the general intent of the people in adopting the 1978 amendment of art 9, § 9, we next examine the language of art 9, § 9. The interpretation that should be given the constitution is that which reasonable minds, the great mass of the people themselves, would give it. *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971); *Durant, supra.* A provision creating and defining a right or power should be read according to its natural, common, and most obvious meaning, and consideration of dictionary definitions is appropriate. *People v Bissonette,* 327 Mich 349, 356-357; 42 NW2d 113 (1950); *Syntex Laboratories, Inc v Dep't of Treasury,* 188 Mich App 383, 386; 470 NW2d 665 (1991).

---

[3] See Ashenfelter, *State may lead U.S. in gas taxes,* The Detroit News, September 7, 1978, p 1-A, which was attached to and mentioned in the parties' stipulation of facts submitted to the circuit court.

Article 9, § 9 states that the restricted funds may be used "exclusively for the transportation purposes of planning, administering, constructing, reconstructing, financing, and maintaining" highways. We agree with the defendants that the authority in art 9, § 9 for payment of tort judgments flows from a reasonable interpretation of all the listed uses. For instance, the state's liability for defective highways is based on the state's "failure . . . to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel." MCL 691.1402; MSA 3.996(102). Tort judgments may arise from the state's failure to maintain highways in reasonable repair. Maintenance is a listed use under art 9, § 9.

"Administering" is also listed in art 9, § 9 as a purpose for which to use restricted funds. The following dictionary definition of "administer" was in use at the time art 9, § 9 was amended:

> 1: to manage or supervise the execution, use, or conduct of . . . 3: to manage affairs. [*Webster's New Collegiate Dictionary* (1975).]

Administer is described in 2 CJS, Administer, pp 76-77:

> Etymologically, the word "administer" is applicable to anything that could be done by the hand, to or for another. It is not a technical word, and does not have a strict legal or technical import but is in general use, with a commonly accepted meaning. However, it does not have a single significance. It is susceptible of very broad interpretation.
>
> *    *    *
>
> In a derived sense, applicable to governmental and personal affairs, "administer" is defined as

meaning to bring together, settle, convert, and distribute; to control or regulate in behalf of others; to direct or superintend the execution, application, or conduct of; to dispose, dispense; direct the application of, as to administer the law, justice; to manage or conduct as public affairs; to minister; to serve; to manage or conduct, as public affairs, as to administer the government of the state.

The Department of Transportation has classified the cost of paying tort judgments as an administrative expense in its 1988 annual report. We consider the word "administering" as used in art 9, § 9 to be sufficiently broad so as to include paying tort judgments resulting from defective highways.

Plaintiffs argue that the natural, common, or most obvious meaning of art 9, § 9 is that paying tort judgments is not a permitted use of restricted funds because the amendment fails to specifically list a "liability expenses" category. Because it is not specifically mentioned, the plaintiffs argue that it is excluded under art 9, § 9. However, we do not find the list to be that specific. All the listed purposes are broader categories than "liability expenses." For example, financing is a broad term that includes many aspects of paying for roads, such as repayment of different types of debt and payment for feasibility studies. Planning is also a broad term that includes different aspects of preparation, like the locations for future roads and the timetables for repair of existing roads.

Plaintiffs also argue that the language of art 9, § 9 does not encompass the payment of tort judgments because tort liability is the result of the *improper* planning, administering, constructing, reconstructing, financing, and maintaining of roads. However, if tort liability results from improper planning, administering, constructing, re-

constructing, financing, and maintaining, then it does arise from those activities. Nothing in art 9, § 9 suggests that these purposes must be carried on properly before restricted funds may be used for them. Thus, although art 9, § 9 does not expressly state whether restricted funds can be used to pay tort judgments resulting from defective roads, we find that tort judgments and settlements fit within the meaning of the purposes listed in the article.

Our ruling is not inconsistent with the decision in *Co Road Ass'n of Michigan, supra.* In that case, this Court ruled that neither restricted funds nor funds set aside for comprehensive transportation purposes could be used to pay for a study of air pollution caused by privately owned vehicles. *Id.,* p 248. The Court reasoned that the purpose of the testing program did not fit under the purposes listed in art 9, § 9, particularly because any impact from the testing program would be indirect and a chance by-product. *Id.,* pp 247-248. By contrast, the payment of tort judgments for defective highways has a direct impact on the purposes listed in art 9, § 9. Tort judgments and settlements arising from claims under § 2 of the governmental immunity act can only result from the state's failure to properly plan, construct, or maintain a road. Moreover, the potential liability for improperly constructing and maintaining roads undoubtedly influences planning, constructing, and maintaining decisions by the Department of Transportation.

Both parties cite cases from other jurisdictions interpreting constitutional provisions similar to our constitution's art 9, § 9. We agree with the circuit court in this case that these other cases are not very helpful to our analysis given the peculiar history of and the circumstances surrounding the 1978 amendment. Nevertheless, we will discuss the

cases in order to fully address the plaintiffs' arguments.

Plaintiffs first cite *State ex rel Wharton v Babcock,* 181 Minn 409; 232 NW 718 (1930), where the Minnesota legislature waived that state's governmental immunity by statute so that the plaintiff could recover for her husband's death resulting from the negligent maintenance of a bridge. The issue was whether restricted funds like those in this case could be used to pay damages. Although the language restricting the use of the funds was similar to those purposes listed in art 9, § 9, it differed from art 9, § 9 in that it does not include administering. Moreover, the *Babcock* decision was strongly influenced by the fact that Minnesota had not abrogated its governmental immunity in general and thus had no legal liability for the plaintiff's husband's death.

Next, plaintiffs cite *Mallard v State,* 194 So 447 (La App, 1940), where the Louisiana legislature waived the state's governmental immunity so that the plaintiff, who was hit by a highway commission truck, could sue for his injuries. The legislative act authorized payment if the plaintiff won a judgment "out of any funds belonging to said Commission which may be legally used for the payment of said judgment." *Id.,* p 449. The *Mallard* court failed to rule that the judgment could not be paid from restricted funds. Rather, the court assumed that it could not and read the legislature's grant as providing that nonrestricted funds would be used. *Id.,* p 451. The court did not mention the language of the constitutional provision that restricted the use of the funds. However, it appears that the constitution's language was much more narrow than that used in art 9, § 9. See *State ex rel, Varnado v Louisiana Highway Comm,* 177 La 1; 147 So 361 (1933).

Plaintiffs also cite *Automobile Club of Washington v Seattle,* 55 Wash 2d 161; 346 P2d 695 (1959), which involved a constitutional restriction that used broader language than that used in either *Babcock* or *Mallard.* In *Automobile Club,* the issue was whether a tort judgment arising from the negligent operation of a bridge by a city could be paid from restricted funds. The constitutional provision stated that restricted funds could be used only for highway purposes and then defined that term. Like *Babcock, Automobile Club* is distinguishable because Washington had not abrogated its governmental immunity at the time of the suit. The court in *Automobile Club* was also persuaded that the people did not intend to waive indirectly the immunity by permitting a city to use state funds to pay tort judgments against the city. *Id.,* p 171. We find these three cases from other jurisdictions to be inapplicable in this case.

In conclusion, we hold that the trial court erred in ruling that restricted funds could not be used to pay tort judgments arising from claims under the defective highway exception to governmental immunity. The purpose of the 1978 amendment of art 9, § 9 was not to prohibit the use of restricted funds to pay tort judgments, but was intended to established the percentage of restricted funds to be used for mass transportation. We further hold that the purposes for the use of the restricted funds listed in Const 1963, art 9, § 9 includes the payment of judgments and settlements arising from claims under MCL 691.1402; MSA 3.996(102). The judgment of the circuit court, therefore, is reversed.

Reversed.