ALLIANCE FOR THE MENTALLY ILL OF MICHIGAN v DEPARTMENT
OF COMMUNITY HEALTH

MICHIGAN COUNCIL 25, AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO v DEPARTMENT OF
COMMUNITY HEALTH

Docket Nos. 202942, 206237, 203133. Submitted June 9, 1998, at Detroit.
Decided September 25, 1998, at 9:15 A.M. Leave to appeal sought.

Alliance for the Mentally Ill of Michigan and others filed a class action
in the Wayne Circuit Court, against the Michigan Department of
Community Health and four of its directors (hereafter collectively
referred to as the defendant), seeking to enjoin the defendant from
implementing plans to close three mental health facilities, from cut-
ting admissions at the facilities, from discharging or transferring
patients, and from reducing the census of beds available, and seek-
ing to maintain appropriate full-time employee contingents and
beds at the level contained in the pertinent appropriations act, 1996
PA 352. The plaintiffs, an organization representing mentally ill
patients and their families, mental health patients and family mem-
bers, and employees of the mental health facilities, also sought a
declaration that the defendant's administrative decisions made in
preparation for the closure violated the appropriations act and the
Separation of Powers Clause, Const 1963, art 3, § 2. The court, J.
William Callahan, J., issued a temporary restraining order and a
preliminary injunction. The Court of Appeals entered an order on
May 12, 1997, that granted the defendant's application for leave to
appeal and partially stayed the preliminary injunction. The Court,
while retaining jurisdiction, also remanded the matter to the circuit
court for a ruling with regard to the plaintiffs' petition for a perma-
nent injunction on an expedited basis. (Docket No. 202942). On
remand, the trial court entered a final order granting a permanent
injunction on the ground that the closures and consolidations
planned by the defendant violated the state's constitutional duty
under Const 1963, art 8, § 8 to foster and support public institu-
tions. The Court of Appeals granted the defendant's application for
leave to appeal from that order and entered a stay of the perma-
nent injunction. (Docket No. 206237).

Michigan Council 25, American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME) brought an action in the Ingham Circuit Court against the Michigan Department of Community Health, seeking injunctive relief pending resolution of a prohibited-practice charge filed by the AFSCME, a labor organization that represents state mental health workers, with the Michigan Civil Service Commission protesting the defendant's refusal to bargain with regard to the same consolidation plan concerned in the Wayne County action and the effects of the consolidation on employees' wages, hours, and working conditions. The court, Lawrence M. Glazer, J., entered an order enjoining the defendant from laying off or transferring any of the AFSCME-represented employees of the three mental health facilities until final resolution of the prohibited-practice charge. "Final resolution" was defined as the nonprevailing party having exhausted its administrative remedies. The defendant appealed from that order as of right. (Docket No. 203133). The Court of Appeals entered orders to stay the trial court's order and to consolidate the appeals.

The Court of Appeals *held*:

1. The defendant's challenge to the preliminary injunction in Docket No. 202942 is moot and need not be addressed by the Court of Appeals because the trial court entered a permanent injunction on remand that is considered in Docket No. 206237.

2. The term "institutions" in Const 1963, art 8, § 8 refers to institutions in general, including both public and private institutions. The court in Docket No. 206237 reached an incorrect legal conclusion in holding that the term refers to state-owned public institutions only. The permanent injunction entered by the court restraining and enjoining the closure of the three mental health facilities must be vacated.

3. The court in Docket No. 203133 had subject-matter jurisdiction to issue the preliminary injunction.

4. Consideration of the factors to be evaluated by a court in determining whether to issue a preliminary injunction mandates a conclusion by the Court of Appeals that the court in Docket No. 203133 abused its discretion in entering a preliminary injunction preventing both layoffs and transfers. Neither the record nor the trial court's findings reveal that the AFSCME established that the preliminary injunction should be entered. The preliminary injunction must be vacated.

Vacated.

1. CONSTITUTIONAL LAW — MENTAL HEALTH — WORDS AND PHRASES — INSTITUTIONS.

The term "institutions" in the constitutional provision that requires the fostering and support of institutions, programs, and services for the care, treatment, education, or rehabilitation of those inhabitants who are physically, mentally, or otherwise seriously handicapped does not refer to public institutions only but, instead, refers to institutions in general, including both public and private institutions (Const 1963, art 8, § 8).

2. COURTS — INJUNCTIONS — JURISDICTION — CIRCUIT COURTS — EQUITY.

The circuit courts, as courts of general equity jurisdiction, have subject-matter jurisdiction to issue an injunction in an action where the plaintiff seeks only equitable relief in the form of an injunction (MCL 600.605; MSA 27A.605).

3. INJUNCTIONS — PRELIMINARY INJUNCTIONS.

A court, in determining whether to grant a request for a preliminary injunction, must consider the likelihood that the party seeking the injunction will prevail on the merits, the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and the harm to the public interest if the injunction is issued.

4. INJUNCTIONS — LABOR RELATIONS — ECONOMIC INJURY.

It is generally not proper to issue a preliminary injunction to reinstate a terminated employee or to prevent an employee's layoff; irreparable injury is not established for purposes of a request for a preliminary injunction by a showing of economic injury where an employee's injury can be remedied by damages at law.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller, Gail M. Wilson,* and *Heidi A. Eichmann*), Michigan Legal Services (by *Susan K. McParland*), and *Steinberg, O'Connor & Burns, P.L.L.C.* (by *Doyle O'Connor*), for the plaintiffs in Docket No. 202942.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller* and *Ann L. Miller*), Michigan Legal Services (by *Susan K. McParland*), and *Steinberg, O'Connor & Burns, P.L.L.C.* (by *Doyle O'Connor*), for the plaintiffs in Docket No. 206237.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller* and *Michael J. Granzeier*), for the plaintiff in Docket No. 203133.

Michigan Protection and Advocacy Service, Inc. (by *Kathleen N. Harris* and *Mark A. Cody*), and Center for Public Representation (by *Robert D. Fleischner*), for the intervening plaintiffs in Docket Nos. 202942, 206237.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Peter L. Trezise* and *Alan F. Hoffman*, Assistant Attorneys General, for the defendants in Docket Nos. 202942, 206237.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Peter L. Trezise*, Assistant Attorney General, for the defendant in Docket No. 203133.

Amicus Curiae:

*Silver & Associates* (by *Kenneth F. Silver*), for the Michigan Psychiatric Society.

Before: WAHLS, P.J., and HOLBROOK, JR., and FITZGERALD, JJ.

PER CURIAM. In Docket No. 203133 (the Ingham case), defendant, the Michigan Department of Community Health, appeals as of right an injunction entered by the Ingham Circuit Court on April 21, 1997, to bar defendant from laying off or transferring any union-represented employees at the following mental health facilities: Clinton Valley Center (CVC), Detroit Psychiatric Institute (DPI), and the Pheasant Ridge Center of the Kalamazoo Psychiatric Hospital

(Pheasant Ridge), until final "resolution"[1] of a prohibited-practice charge brought by plaintiff, Michigan Council 25, American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME), pending before the Michigan Civil Service Commission.[2]

In Docket No. 202942, defendants the Michigan Department of Community Health and four directors appeal by leave granted a preliminary injunction entered by the Wayne Circuit Court on April 21, 1997 (the Wayne case). The injunction bars defendants from closing the same three facilities involved in Docket No. 203133, with the exception that the "status quo" at Pheasant Ridge was to be maintained as ordered pending further proceedings scheduled for May 12, 1997. In Docket No. 206237, defendants[3] appeal by leave granted a permanent injunction entered on September 21, 1997, to restrain and enjoin the closure of CVC, DPI, and Pheasant Ridge for the reason that the closures would violate Const 1963, art 8, § 8. The appeals were consolidated.

## FACTS

In 1991, the state of Michigan launched a new program to address the treatment needs of the mentally ill. Since 1991, several state psychiatric hospitals have been closed. On February 6, 1997, defendant announced a consolidation plan for certain mental

---

[1] "Resolution" was defined by the court as "[t]he non-prevailing party has exhausted its administrative remedies."

[2] The preliminary injunction was intended to be a final order.

[3] Although there are several defendants in the Wayne case, they will be jointly referred to hereinafter as "defendant" (meaning the Michigan Department of Community Health) because the individual defendants have been sued in their capacity as agents relative to this department and because this will provide consistency with the Ingham case.

health facilities that would result in closures at CVC, DPI, and Pheasant Ridge by October 4, 1997. The specific consolidation plans set forth in a February 27, 1997, memorandum entitled "Consolidation of State Psychiatric Hospitals and Centers" were:

> *Clinton Valley Center*, a psychiatric hospital in Pontiac, will be consolidated with the Caro Center in Caro and the Walter Reuther Psychiatric Hospital in Westland, which serves older persons with mental illness. The census at CVC was 219 as of February 26, 1997.
>
> Adult Services at the *Detroit Psychiatric Institute* will be consolidated with Walter Reuther Psychiatric Hospital in Westland and the Northville Psychiatric Hospital in Northville. The census in DPI adult services was 102 as of February 26, 1997.
>
> Children's Services at DPI will consolidate with Hawthorn Center in Northville. The census in DPI children's services was 13 as of February 26, 1997.
>
> Children's services at the *Pheasant Ridge* unit of the Kalamazoo Psychiatric Hospital in Kalamazoo will be consolidated with Hawthorn Center. The census in *Pheasant Ridge* was 3 as of February 26, 1997.
>
> Caro Center services for persons with developmental disabilities will consolidate with the Mt. Pleasant Center in Mt. Pleasant. Caro's inpatient psychiatric services will expand with the consolidation of the *Clinton Valley Center*. The census at the Caro Center for persons with developmental disabilities was 89 as of February 26, 1997. The census at the Caro Center for persons with mental illness was 91 as of February 26, 1997. [Emphasis added.]

### THE INGHAM CASE

The Ingham case was filed on behalf of the unionized employees of the facilities. Plaintiff AFSCME is a labor organization that represents state mental health workers. In March 1997, representatives of defendant

and the AFSCME met to discuss the effect of the consolidation plan on the AFSCME's members. Defendant's position was that the collective bargaining agreement adequately covered the subject of closures and, therefore, no "impact negotiations" were necessary.

On March 26, 1997, the AFSCME filed a prohibited-practice charge with the Michigan Civil Service Department, alleging that defendant violated § 6-10.4 of the Civil Service Commission Rules. Section 6-10.4, entitled "Refusal to Meet," states that "[i]t is an unfair labor practice for the employer to refuse to bargain in good faith or meet and confer with recognized employee organizations as required by this rule."[4] On March 31, 1997, the AFSCME filed the present action in the Ingham Circuit Court. The AFSCME sought "injunctive relief pending resolution of a Prohibited Practice Charge filed by AFSCME with the MCSC [Michigan Civil Service Commission] protesting DCH's [defendant's] refusal to bargain over the 'consolidation' of several State psychiatric facilities and the effects of such 'consolidation' on employees' wages, hours and working conditions." Simultaneously with the complaint, the AFSCME moved for a temporary restraining order and preliminary injunction. As relief, the AFSCME sought to enjoin any actions toward consolidation, downsizing, layoffs, displacements, or other changes in employment conditions until the prohibited-practice proceeding was concluded.

On April 21, 1997, an order was entered granting injunctive relief. The injunction was to expire, by its own terms, upon final resolution of the prohibited-

---

[4] It is undisputed that it takes approximately one year after the filing of a prohibited-practice charge to obtain a final ruling.

practice charge. Defendant appealed this order as of right. Defendant's motion for a stay was granted by this Court on June 13, 1997.

THE WAYNE CASE

Plaintiff Alliance for the Mentally Ill of Michigan is an organization representing mentally ill patients and their families. The other plaintiffs are mental health patients and family members, as well as employees of the mental health facilities. Plaintiffs filed this action as a "verified class action complaint" on March 31, 1997, seeking to enjoin defendant from implementing plans to close CVC, DPI, and Pheasant Ridge, from cutting admissions to these facilities, from discharging or transferring patients, and from reducing the census of beds available, and seeking to maintain appropriate full-time employee contingents and beds at the level contained in the pertinent appropriations act, 1996 PA 352. Plaintiffs also sought a declaration that defendant's administrative decisions made in preparation for the closures violated the appropriations act and the Separation of Powers Clause of the Michigan Constitution, Const 1963, art 3, § 2.

On April 1, 1997, the trial court issued a temporary restraining order.[5] On April 21, 1997, the trial court issued a preliminary injunction on the basis of facts stipulated by the parties for that purpose. The apparent intent of the plaintiffs in seeking the preliminary injunction was to keep Pheasant Ridge open for admissions until a hearing on May 12, 1997, at which time it was to remain open only if there were at least

_____

[5] The final order pertains only to count II, which plaintiffs labeled as "Violation of Provision Governing Services and Institutions for Persons with Mental Disabilities."

ten individuals clinically appropriate for admission. The preliminary injunction also prohibited defendant from downsizing cvc and dpi, transferring patients except for clinically appropriate reasons or voluntary requests, and effectuating any layoffs or transfers of employees.

On May 12, 1997, this Court granted defendant's application for leave to appeal and granted defendant's motion for a stay, with the following limitation: "Those portions of the April 21, 1997, Preliminary Injunction regarding the Pheasant Ridge facility are stayed until the Circuit Court adjudicates whether a permanent injunction should issue, or until further order of this Court. Without patients at the Pheasant Ridge facility there is no irreparable harm warranting a preliminary injunction." This Court also, while retaining jurisdiction, remanded the matter to the trial court for an expedited hearing regarding the plaintiffs' motion for a permanent injunction.

In August 1997, the parties presented proofs regarding disputed factual issues and submitted proposed findings. On September 19, 1997, the trial court entered a final order granting a permanent injunction on the ground that the closures and consolidations violated the state's constitutional duty under Const 1963, art 8, § 8 to foster and support *public* institutions. This Court granted defendant's application for leave to appeal on September 23, 1997, and entered a stay of the permanent injunction.

I

Defendant first raises a challenge to the issuance of the preliminary injunction in the Wayne case (Docket No. 202942). The objective of a preliminary injunction

is to maintain the status quo pending a final hearing regarding the parties' rights. *Fancy v Egrin*, 177 Mich App 714, 719; 442 NW2d 765 (1989). See also *Int'l Union v Michigan*, 211 Mich App 20, 26; 535 NW2d 210 (1995). Here, this Court ordered an expedited decision regarding the permanent injunction. A final order granting a permanent injunction was thereafter entered and is now before this Court in Docket No. 206237. Because a permanent injunction was entered, defendant's challenge to the earlier preliminary injunction is moot and need not be addressed. *Affeldt v Dudley Paper Co*, 306 Mich 39; 10 NW2d 299 (1943).

II

In the Wayne case (Docket No. 206237), defendant contends that, in closing or consolidating CVC, DPI, and Pheasant Ridge, it was implementing a policy choice to foster and support private institutions rather than to own and operate public institutions. Defendant asserts that Const 1963, art 8, § 8  does not require the state to operate public institutions and, consequently, cannot prohibit the state from closing or consolidating  public  institutions.  Hence,  defendant argues that the trial court erred in concluding that art 8, § 8  was violated by the closing or consolidating of CVC, DPI, and Pheasant Ridge.

Constitutional issues are questions of law and are reviewed de novo on appeal. *Mahaffey v Attorney General*, 222 Mich App 325, 334; 564 NW2d 104 (1997). However, deference is given to a trial court's findings when facts are in dispute. A trial court's findings of fact will not be set aside unless clearly errone-

ous. MCR 2.613(C).[6] See also *Ornelas v United States,*
517 US 690; 116 S Ct 1657; 134 L Ed 2d 911 (1996).
  Const 1963, art 8, § 8 states:

> Institutions, programs and services for the care, treat-
> ment, education or rehabilitation of those inhabitants who
> are physically, mentally or otherwise seriously handicapped
> shall always be fostered and supported.

The trial court held that the word "institution" ref-
ers solely to state-owned public institutions and that
the closure of public institutions violates the constitu-
tional duty to "foster and support" public facilities.

Thus, the narrow question presented for our review
is whether the term "institutions" in Const 1963, art 8,
§ 8  refers to institutions in general, including both
public and private institutions, or whether the term
refers only to public institutions. The plain language
of art 8, § 8 alone appears to resolve this question.
*People v Bd of State Canvassers,* 323 Mich 523, 529;
35 NW2d 669 (1949).  There is no qualifying language
in the constitutional provision that suggests that the
term refers only to public institutions, and nothing in
the usual and ordinary meaning of the term, as dis-
cerned from its dictionary definition, requires such a
result. *Michigan Rd Builders Ass'n v Dep't of Man-
agement & Budget,* 197 Mich App 636, 644; 495 NW2d
843 (1992).  "Institution" is defined in *Random House
Webster's College Dictionary* (1997), p 677,  as:

---

[6] For purposes of this analysis, deference is given to Judge CALLAHAN's
findings of fact regarding disputed issues. Hence, it is assumed that
defendant was implementing a policy choice to foster and support private
institutions when the closures and consolidations of CVC, DPI, and Pheas-
ant Ridge were made.

1. an organization or establishment devoted to the promotion of a cause or program, esp. one of a public, educational, or charitable character. 2. the building devoted to such work. 3. a place for the care or confinement of people, as mental patients. . . .

The abbreviation "esp." in the first part of the definition means "especially." *Id.* at xxix. Thus, the definition indicates that an institution is often, but is not always, dedicated to a public, educational, or charitable *cause.* The definition does not distinguish, however, the public or private nature of the organization or establishment itself. Applying the rule that the interpretation given the provision be the sense most obvious to the common understanding, the one that reasonable minds, the great mass of the people themselves, would give it, *House Speaker v Governor,* 443 Mich 560, 577; 506 NW2d 190 (1993), and recognizing that we are required to avoid an interpretation that creates a constitutional invalidity, *id.* at 585, we hold that institutions may be, but are not required to be, public institutions.[7]

Even if we considered the constitutional language less certain in its import, we would be constrained to reject the position advocated by plaintiffs. Any doubt whether Const 1963, art 8, § 8 limits the state-

---

[7] Indeed, when the framers of the 1963 Michigan Constitution intended a reference to institutions to mean state institutions, they said so. See, e.g., Const 1963, art 8, § 3 ("Leadership and general supervision over all public education, including adult education and instructional programs in *state institutions,* except as to institutions of higher education granting baccalaureate degrees, is vested in a state board of education." [Emphasis added.]); Const 1963, art 2, § 9 ("The power of referendum does not extend to acts making appropriations for *state institutions* . . . ." [Emphasis added.]); Const 1963, art 11, § 5 ("The classified state civil service shall consist of all positions in the state service except . . . employees of the *state institutions of higher education* . . . ." [Emphasis added.]).

mandated fostering to public institutions was eliminated by the decision in *Livonia v Dep't of Social Services*, 423 Mich 466, 483, 495-496; 378 NW2d 402 (1985), where the Supreme Court held that legislation exempting state-licensed but privately owned and operated adult foster care facilities from municipal zoning ordinances furthers the goals of Const 1963, art 8, § 8. This decision precludes further debate with regard to whether the phraseology of art 8, § 8 is properly limited only to *public* institutions.

Hence, the trial court reached an incorrect legal conclusion in holding that the term "institutions" in Const 1963, art 8, § 8, refers only to state-owned public institutions. Because the word "institutions" in art 8, § 8 is not limited to public institutions,[8] we vacate the permanent injunction restraining and enjoining the closure of CVC, DPI, and Pheasant Ridge.[9]

III

In the Ingham case (Docket No. 203133), defendant argues that the circuit court did not have jurisdiction to issue a preliminary injunction and that, even if the court had jurisdiction, the AFSCME failed to exhaust its administrative remedies before seeking injunctive relief. Whether a court has subject-matter jurisdiction is a question of law that this Court reviews de novo. *Smith v Smith*, 218 Mich App 727, 729; 555 NW2d 271 (1996).

---

[8] There is no dispute that the defendant has a constitutional duty to "foster and support" institutions, whether public or private, and nothing in this opinion is to be construed to diminish that duty.

[9] Because of our resolution of this issue, we need not address the remainder of the issues raised by defendant in Docket No. 206237.

MCL 600.605;   MSA 27A.605 defines the original jurisdiction of the circuit courts:

> Circuit Courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.

Here, the AFSCME sought only equitable relief in the form of a preliminary injunction. As a court of general equity jurisdiction, the circuit court had subject-matter jurisdiction to issue an injunction. *Univ Am-Can Ltd v Attorney General*, 197 Mich App 34, 37; 494 NW2d 787 (1992).   See also *Silverman v Univ of Michigan Bd of Regents*, 445 Mich 209, 217; 516 NW2d 54 (1994);   *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 166; 365 NW2d 93 (1984).[10]

IV

Defendants also argue in the Ingham case that the AFSCME did not meet the requirements for injunctive relief. In determining whether to issue a preliminary injunction, a court must consider (1) the likelihood

---

[10] Contrary to defendant's argument, plaintiff did not invoke circuit court jurisdiction under Const 1963, art 11, § 5 and, therefore, this constitutional provision is not relevant to the circuit court's jurisdiction. In addition, defendant's reliance on *Judges of the 74th Judicial Dist v Bay Co*, 385 Mich 710; 190 NW2d 219 (1971), in support of its argument that exhaustion of administrative remedies is a prerequisite to invoking circuit court jurisdiction is misplaced. Examined in context, the case provides no support for the proposition that a preliminary injunction cannot issue until administrative remedies are exhausted. Indeed, such a holding would render the preliminary injunction meaningless because its objective of maintaining the status quo will no longer exist once the administrative proceedings conclude.

that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. *Campau v McMath*, 185 Mich App 724, 729; 463 NW2d 186 (1990). This Court will not disturb a trial court's grant of a preliminary injunction absent an abuse of discretion. *Id.* We will sustain the trial court's finding of fact unless we are convinced that we would have reached a different result. *Fruehauf Trailer Corp v Hagelthorn*, 208 Mich App 447, 449; 528 NW2d 778 (1995).

With regard to the first element, the trial court found that

> the central issue before this court is not whether the State has a duty to bargain over these changes, but, rather, whether civil service has jurisdiction to decide this matter initially, and there is no dispute that it does. If that's seen as the issue, then the [AFSCME] does have a substantial likelihood of prevailing on that issue.

We disagree with the trial court's conclusion. The central issue was whether the AFSCME would prevail on the prohibited-practice charge filed against the "Office of the State Employer and its Affiliated Departments" that alleged a violation of § 6-10.4 of the Civil Service Commission Rules. Section 6-10.4, entitled, "Refusal to Meet," provides that "[i]t is an unfair labor practice for the employer to refuse to bargain in good faith or meet and confer with recognized employee organizations as required by this

rule." Although defendant correctly points out that it is not the "Office of the State Employer," defendant has failed to establish the significance of this point to the issuance of a preliminary injunction relative to state action. The more significant question presented by the parties concerns the effect of the collective bargaining agreement on the prohibited-practice charge and the "adverse-impact" issue that the AFSCME claimed should be the subject of negotiation in the prohibited-practice charge.

In this regard, defendant's position is that the AFSCME cannot prevail on the merits of its prohibited-practice charge because the management rights defendant retained under article 6 of the collective bargaining agreement allow defendant to organize its operations, assign and transfer employees, and determine the size and composition of its work force without engaging in negotiations with the AFSCME. Article 6 (entitled "Management Rights") provides, in part:

It is understood and agreed by the parties that management possesses the sole power, duty and right to operate its Departments, Agencies and programs so as to carry out constitutional and statutory mandates and goals assigned to the Department and Agencies and that all management rights repose in management. Management rights include, but are not limited to, the right, without engaging in negotiations, to:

1. Determine matters of managerial policy; mission of the agency; budget; the method, means and personnel by which government operations are to be conducted; organization structure; standards of service and maintenance of efficiency; the right to select, classify, promote, assign or transfer employees; discipline employees for just cause; and in cases of temporary emergency, to take whatever action is necessary to carry out the agency's mission. *However, if such determinations alter conditions of employment to*

*produce substantial adverse impact upon employees, the modification and remedy of such resulting impact on changes in conditions of employment shall be subject to collective bargaining requirements.*

2. Utilize personnel, methods and means in the most appropriate and efficient manner as determined by management.

3. Determine the size and composition of the work force, direct the work of the employees, determine the amount and type of work needed and, in accordance with such determination, relieve employees from duty because of lack of funds or lack of work. [Emphasis added.]

Lending further support for defendant's position that it retained the right to lay off or transfer employees under the collective bargaining agreement is § N of article 13, which specifically covers the transfer of employees at "Closing Agencies":

Employees at Agencies that have been designated for closure by the Departmental Director shall have the same transfer rights as provided in Article 13, Section H [dealing with recall from layoff], and may also place their names on the Statewide recall list in seniority order. Employees working in an Agency who have been laid off from one of the closed Agencies and who wish to transfer to another Agency may also place their names on the Departmental recall list in seniority order for one other Agency.

Thus, under the collective bargaining agreement, defendant retained the right to close or consolidate CVC, DPI, and Pheasant Ridge and to transfer or lay off employees as necessary with regard to those closings or consolidations. The only qualification would be the right to bargain retained by the AFSCME in the emphasized part of article 6 with regard to the modification and remedy resulting from altered conditions of

employment that produce "substantial adverse impact" upon employees.

We are unable to determine with certainty what "adverse impact" the AFSCME is claiming would be subject to negotiations. Significantly, the AFSCME has made no specific argument that it should be able to negotiate the decision to close or consolidate the facilities. The AFSCME's argument appears to be directed at the "impact" of the consolidations on matters such as layoffs, transfers, and other unspecified "adverse changes" in terms and conditions of employment. Assuming, arguendo, that the AFSCME would be able to establish some "adverse impact" that would be subject to negotiation, it is unlikely that the AFSCME will prevail at keeping the facilities open. While it is arguable that this factor would support enjoining layoffs, this factor does not support the issuance of an injunction against involuntary transfers.

The next factor to consider is the danger that the party seeking the injunction will suffer irreparable injury if the injunction is not issued. The trial court determined only that there would be monetary harm as a result of lost jobs. However, the monetary harm pertains only to the layoffs. In the event of transfers, the monetary harm is either increased travel time to work or having to move to another location.

Generally, irreparable injury is not established by showing economic injury because such an injury can be remedied by damages at law. *Int'l Union v Michigan*, 194 Mich App 489, 507-508; 491 NW2d 855 (1992), modified on other grounds 440 Mich 858 (1992). Moreover, this Court has previously indicated that, in general, a preliminary injunction should not issue to reinstate an employee or prevent his layoff.

194 Mich App 508. However, in *Int'l Union*, this Court affirmed a preliminary injunction that prevented the defendant from laying off employees of the Lafayette Clinic, a mental health facility, and from implementing a plan to reduce the size and nature of the services offered at the Lafayette Clinic. Although this Court recognized that generally economic losses would not justify a preliminary injunction, it sustained a preliminary injunction issued "in aid of arbitration." *Id.* at 509. However, a factor distinguishing *Int'l Union* from this case is the fact that the plan in the instant case was to close facilities, and not merely to downsize the facilities or to alter services provided therein.

The third factor to consider is the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief. Here, the trial court focused primarily on monetary harm in determining that employees would suffer greater potential harm than would defendant.[11] However, the harm to defendant needs to be considered in light of the fourth factor concerning the harm to the public interest. The trial court failed to consider this factor and simply concluded that it was "in the public interest to grant a preliminary injunction." However, the

---

[11] The court held:

The impact on the Defendant would be monetary. It would be required to keep facilities open for a time, and the Defendant wants to close those facilities presumably to save some money. The impact on the Plaintiff's members would also be monetary, but in proportional terms, it would be much greater than the impact on the Defendant because a much higher percentage of each family's income would be affected by these changes than the proportion of the Defendant's budget that would be affected by these changes.

private interests of some of the AFSCME's members are not tantamount to the "public interest." Indeed, the public interest would not be served by spending taxpayer dollars to pay wages for employees while the prohibited-practice charge is pending if, in fact, it is ultimately determined that the layoffs and transfers are not in violation of the collective bargaining agreement.[12]

After consideration of the relevant factors, we conclude that the trial court abused its discretion in issuing the preliminary injunction preventing both layoffs and transfers. Neither the record nor the trial court's findings reveal that the AFSCME established that the preliminary injunction should be entered. Consequently, we vacate the preliminary injunction restraining and enjoining the layoff or transfer of the employees at CVC, DPI, and Pheasant Ridge.

Vacated.

---

[12] Indeed, it is unlikely that defendant would be able to recover from the employees any wages paid during the layoff. Conversely, if it is ultimately determined that the layoffs were in violation of the collective bargaining agreement, defendant would likely be responsible for paying lost wages.